**Mrs. Thomas J. KEITH, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**U.S. AIRWAYS, INC., Defendant.**

**No. 1:97CV00984.**

United States District Court, M.D. North Carolina, Durham Division.

Jan. 26, 1998.

B. Ervin Brown, II, James S. Gibbs, Jr., Moore and Brown, Winston–Salem, NC, Beverly C. Moore, Jr., Moore and Brown, Washington, DC, Martha Marie Eastman, Maready Comerford & Britt, L.L.P., Winston–Salem, NC, for Plaintiff.

Penni Pearson Bradshaw, Kilpatrick Stockton, L.L.P., Winston–Salem, NC, Cliff Fonstein, O'Melveny & Myers LLP, New York City, for Defendant.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

In this action, Plaintiff Ellen Keith seeks to recover on behalf of herself and other similarly situated for personal injuries allegedly caused by use of Defendant U.S. Airways' equipment in the course of employment. The case is presently before the court on Defendant's motion to dismiss Plaintiff's complaint as untimely and for failure to state a claim. Plaintiff responds to this motion in two ways. First, in an apparent attempt to remedy omissions in pleading her claim. Plaintiff's memorandum in opposition cites her affidavit and other materials outside the pleadings and urges the court to treat the matter as one for summary judgment. Second, after submission of Defendant's motion to the court, Plaintiff filed an amended complaint as of right under Federal Rule of Civil Procedure 15(a). Because the parties have not had reasonable opportunity to present all material pertinent to a motion for summary judgment, *see* Fed.R.Civ.P. 12(b), the court will decline Plaintiff's invitation to rule on summary judgment and will instead address Defendant's arguments for dismissal as applied to Plaintiff's amended complaint.[1] For

---

1. The court will not require Defendant to file a new motion to dismiss repeating its arguments

the reasons set forth below, the court will grant Defendant's motion and dismiss Plaintiff's amended complaint.

## BACKGROUND

The following facts are taken from Plaintiff's amended complaint and, for the purposes of this motion, are accepted as true. Plaintiff worked as a reservations sales representative for Defendant for approximately seven years, from February 2, 1987, to June 26, 1994. (Am.Compl.¶ 1). Her job required her to enter data into a computer for eight hours a day. On May 27, 1992, Plaintiff was diagnosed with lateral epicondylitis ("tennis elbow"), a problem in the muscles which extend the wrist and fingers and control the forearm. Plaintiff argues that this disorder was caused by her continuous use of an allegedly ergonomically incorrect Telex keypad and Memorex computer screen provided by her employer. (Id. 3).

In February 1993 Plaintiff was diagnosed as suffering from radial tunnel syndrome. This kept her out of work from February 10, 1993, to June 21, 1993. (Id. ¶ 5). On February 17, 1993, Dr. Gary Kuzma diagnosed Plaintiff with radial tunnel syndrome, lateral epicondylitis, and carpel tunnel syndrome. (Id. ?6). Plaintiff underwent surgery for these injuries on April 22, 1993, during which Dr. Kuzma performed a series of nerve conductions confirming his earlier diagnosis.

On or about June 25, 1993, Dr. Kuzma informed Pam Hensdale, the office administrator, of Defendant's special reservations sales center in Greensboro, North Carolina, about Plaintiff's condition. Dr. Kuzma asked U.S. Airways to provide Plaintiff with a special chair designed to elevate her above her computer keyboard for the purpose of reducing or eliminating the repetitive stress in her right arm. (Id. ¶ 7). Plaintiff states that Defendant delayed doing so until October 1993, even though it allegedly knew that delay would exacerbate Plaintiff's condition. (Id.).

The next month Dr. Eldon Beard, another of Plaintiff's doctors, contacted Ms. Hensdale and asked Defendant to raise the level of Plaintiff's computer monitor. (Id. ¶ 8). Plaintiff alleges that this would have reduced the stress on her neck. Plaintiff alleges that Defendant ignored her requests and her doctor's warnings of the importance of raising the monitor, despite the fact that Defendant knew that Plaintiff's neck pain was increasing and her range of motion diminishing.

On June 26, 1994, Plaintiff was placed on sick leave with pain in her neck. Defendant replaced Plaintiff's equipment with ergonomically correct equipment two days later. (Id. ¶ 9). On August 24, 1995, Dr. Kuzma again examined Plaintiff and informed her that she had reached maximum medical improvement and had a ten per cent (10%) disability in her right arm. (Id. ¶ 10). Since that time, Plaintiff claims that she has not been able to return to her job as a reservations sales agent. Nevertheless, Plaintiff waited until August 21, 1997—more than three years after being diagnosed with all three repetitive stress injuries identified in her complaint—before filing this action.

## DISCUSSION

In her complaint, Plaintiff seeks to recover for personal injuries allegedly caused by use of her employer's computer terminal and monitor. (Am.Compl.¶¶ 13–16). Under North Carolina law, a claim for personal injuries must be filed within three years from the date "bodily harm to the claimant ... becomes apparent or ought reasonably to have become apparent to the claimant, whichever occurs first." N.C.Gen.Stat. § 1–52(16). In cases of occupational disease, a cause of action for personal injuries begins to accrue, at the very latest, when the disease is first diagnosed. *Dunn v. Pacific Employers Ins. Co.*, 332 N.C. 129, 132, 418 S.E.2d 645, 647 (1992); *J.W. Wilder v. Amatex Corp.*, 314 N.C. 550, 557, 559–61, 336 S.E.2d 66, 70, 72 (1985). Although it has not spoken directly on the subject, this court finds that the North Carolina Supreme Court would treat

simply because Plaintiff has introduced an amended pleading while the motion was pending. Because the defects raised in the original motion remain in the amended complaint, the court may consider the motion as being addressed to the amended pleading. *See* 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1476 (1990).

repetitive stress disorders like occupational diseases for the purpose of measuring the statute of limitations. Repetitive strain, like an occupational disease such as asbestosis or silicosis, "normally develop(s) over long periods of time," after multiple exposures to causative conditions. *Wilder*, 314 N.C. at 557, 336 S.E.2d at 70. In both instances, "[i]t is impossible to identify any particular exposure as the 'first injury.'" *Id.* Rather, the first identifiable injury occurs when the disease or disorder is diagnosed and no longer lies latent. The court also notes that repetitive stress injuries are treated as "occupational diseases" within the workers' compensation system. *See also Thomason v. Fiber Indus.*, 78 N.C.App. 159, 161–62, 336 S.E.2d 632, 633–34 (1985), *disc. rev. denied*, 316 N.C. 202, 341 S.E.2d 573 (1986) (occupational disease found where repeated lifting, straining, and pulling placed plaintiff at a greater risk of contracting inflammatory condition than the public at large).

■ Plaintiff argues that the statute of limitations did not begin to run on her personal injury claim until she had a civil cause of action under *Woodson v. Rowland*, 329 N.C. 330, 340–41, 407 S.E.2d 222, 228 (1991), sufficient to defeat the exclusivity of the state's workers' compensation system. North Carolina's Workers' Compensation Act, N.C. General Statutes Sections 97–1 *et seq.*, generally provides the exclusive remedy for plaintiffs seeking to recover for injuries arising out of the workplace. The act states that "the right and remedies herein granted to the employee ... shall exclude all other rights and remedies of the employee ... as against the employer at common law or otherwise on account of such injury or death." N.C.Gen.Stat. § 97–10.1 (1991). The North Carolina Supreme Court crafted a narrow

exception to this rule in *Woodson*, holding that:

> when an employer *intentionally* engages in misconduct *knowing it is substantially certain* to cause *serious injury* or *death* to employees and an employee is injured or killed by that misconduct, that employee, or personal representative of the estate in the case of death, may pursue a civil action against the employer.

329 N.C. at 340–41, 407 S.E.2d at 228 (emphasis added).

Plaintiff's argument that the statute of limitations on her personal injury claim began running only when her injury became sufficiently serious to satisfy *Woodson* is unpersuasive. The state supreme court in *Woodson* did not create a new cause of action with a separate statute of limitations. Rather, *Woodson* simply allows employees to pursue certain personal injury claims in court as well as through the workers' compensation system.[2]

Plaintiff's personal injury claim is governed by North Carolina General Statutes Section 1–52(16), under which the limitations period begins to run when "bodily harm to the claimant ... becomes apparent or ought reasonably to have become apparent to the claimant, whichever occurs first." Plaintiff's claims thus accrued no later than when she was diagnosed with her repetitive stress disorders. *Cf. Dunn*, 332 N.C. at 132, 418 S.E.2d at 647. Any subsequent aggravation of her condition does not alter the date of accrual. Accordingly, the three-year statute of limitations began to run on Plaintiff's claim for lateral epicondylitis, radial tunnel syndrome, and carpel tunnel syndrome in February 1993 when she was diagnosed with these injuries. Thus, her ability to bring suit for these injuries expired in February 1996,

---

**2.** Plaintiff argues that her personal injury claim should be treated like a workers' compensation claim for the purpose of determining when the cause of action accrues. *See Taylor v. J.P. Stevens & Co.*, 300 N.C. 94; 98–99, 265 S.E.2d 144, 147 (1980) (stating that the limitation period for occupational diseases in a workers' compensation action begins to run only after an employee has (1) suffered injury by an occupational disease which (2) renders the employee incapable of earning the wages the employee was receiving at

the time of her incapacity by injury). This argument is unpersuasive. Unlike a common law action for negligence, in an action under the Workers' Compensation Act an employee's "disability" is a condition precedent to recovery in all but a few statutorily defined instances. *See Hollman v. City of Raleigh*, 273 N.C. 240, 250, 159 S.E.2d 874, 881 (1968); *Anderson v. Northwestern Motor Co.*, 233 N.C. 372, 374, 64 S.E.2d 265, 266 (1951).

approximately nineteen (19) months before Plaintiff filed her complaint.

■ Although Plaintiff's complaint of repetitive stress injuries in her right arm is time-barred, Plaintiff also complains of some unspecified "neck pain." (Am.Compl.¶ 8). Although her complaint is loosely drafted, Plaintiff appears to allege that Defendant's failure to provide her with a raised computer monitor increased her neck pain and decreased her range of motion. Assuming *arguendo* that Plaintiff has acted upon this "injury" within the limitations period, this claim for a workplace injury to her neck is barred by the Workers' Compensation Act.

■ As mentioned above, in order to proceed with such a claim outside of the workers' compensation system, Plaintiff must plead and prove that her employer intentionally engaged in misconduct that the employer knew was substantially certain to cause serious injury or death and the employee thereby suffered injury. *See Owens v. W.K. Deal Printing, Inc.*, 339 N.C. 603, 604, 453 S.E.2d 160, 161 (1995) (per curiam). In order to fit under this *Woodson* exception Plaintiff alleges (1) that Defendant delayed in responding to requests to raise her computer monitor, Defendant allegedly knew that doing so would cause her serious injury, and (3) Plaintiff's neck pain increased and her range of motion diminished. (Am.Compl.¶¶ 8–9, 11).

Plaintiff's allegations fail to meet the requirements of *Woodson*. *Woodson*'s holding drew a clear distinction between the risk of work-related injury generally and the risk of death or serious injury: "We hold that when an employer *intentionally engages in misconduct knowing it is substantially certain to cause serious injury* or death to employees and an employee is *injured or killed* by that misconduct, that employee ... may pursue a civil action against the employer." 329 N.C. at 340–41, 407 S.E.2d at 228 (emphasis added). *Woodson* thus requires not only that the risk of injury be near certain, but also that the injury listed be severe. Absent a risk of serious injury, an injured employee does not have a *Woodson* claim.

Although North Carolina courts have not defined the meaning of "serious injury" under *Woodson*, these courts have applied *Woodson* only in cases in which employers have risked injury far more serious than the neck pain and decreased range of motion or repetitive stress injury. For example, in *Woodson* itself, the employer risked serious injury by ordering its employees to work in a fourteen-foot-deep ditch without the safety precautions required by governmental regulations to prevent a cave-in. Subsequently, the sides of the trench indeed caved in and crushed an employee. 329 N.C. at 334–36, 407 S.E.2d at 224–26. In *Regan v. Amerimark Bldg. Prods., Inc.*, 118 N.C.App. 328, 454 S.E.2d 849, *rev. denied*, 340 N.C. 359, 458 S.E.2d 189 (1995), *cert. denied*, 342 N.C. 659, 467 S.E.2d 723 (1996), an employer had its employees reach into and clean a paint machine while in operation. This practice had previously caused serious injury and death as employees arms and bodies had been caught in the running machine. 118 N.C.App. at 329, 454 S.E.2d at 851. Nevertheless, the defendant continued the practice and the plaintiff employee's arm and body became caught in the machine when safety devices failed. *Id.* Finally, in *Arroyo v. Scottie's Professional Window Cleaning, Inc.*, 120 N.C.App. 154, 461 S.E.2d 13, *rev. allowed*, 342 N.C. 190, 463 S.E.2d 231 (1995), *rev. improvidently allowed*, 343 N.C. 118, 468 S.E.2d 58 (1996), an employer risked serious injury or death by requiring his employee to lean outward from a building's narrow ledge without fall protection in order to clean that building's windows. The plaintiff employee did in fact fall and suffered permanent injury. 120 N.C.App. at 157–58, 461 S.E.2d at 15–16.[3]

Although Plaintiff alleges that Defendant knowingly risked "Plaintiff being inflicted with ... severe impairing psychical [sic] conditions caused by repetitive stress," (Am. Compl.¶ 11), the facts she has pled do not make out a *Woodson* claim as it has been interpreted by North Carolina courts. The risk of neck ailments of which Plaintiff complains is far less substantial than the risk of

---

**3.** *See also Owens v. W.K. Deal Printing, Inc.*, 113 N.C.App. 324, 438 S.E.2d 440 (1994) (employee's

hand crushed in hydraulic press), *rev'd on other grounds*, 339 N.C. 603, 453 S.E.2d 160 (1995).

serious injuries that the state courts have found to give rise to a *Woodson* claim.[4] To extend *Woodson* to hold Defendant liable for intentionally subjecting Plaintiff to the risk of neck pain and decreased range of motion would undermine the careful balance struck by the North Carolina General Assembly in enacting the Workers' Compensation Act and flood the courts with workplace injury claims. For the same reasons, the court also concludes that even if the statute of limitations did not bar recovery for Plaintiff's repetitive stress injuries diagnosed in February 1993, these claims do not fit within the *Woodson* exception to the exclusivity of the Workers' Compensation Act.

For the foregoing reasons, the court will grant Defendant's motion and dismiss Plaintiff's amended complaint. The posture of the case does not require consideration of Plaintiff's class action allegations. *See* 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1798 (1990).

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's motion to dismiss [Doc. # 2] be, and the same hereby is, **GRANTED,** and this action is **DISMISSED** with prejudice.

---

4. Even if this court were to convert Defendant's motion into one for summary judgment and consider the material offered by Plaintiff to describe the nature of her injury, there is no genuine issue that the injury allegedly risked by Defendant was not sufficiently severe to satisfy *Woodson.*