TOMMY DAVIS NATHAN CAMERON, AND WIFE LISA CAMERON, PLAINTIFFS-APPELLANTS
v. MERISEL, INC., MERISEL PROPERTIES, INC., MERISEL AMERICAS, INC., AND
BRIAN GOLDSWORTHY, DEFENDANTS-APPELLEES

No. COA02-1330

(Filed 16 March 2004)

**1. Workers' Compensation— statutes of limitation—*Woodson* and *Pleasant* claims**

The trial court erred by dismissing *Woodson* and *Pleasant* toxic mold claims under one-year statutes of limitation. Both are subject to three-year statutes of limitation.

**2. Workers' Compensation— toxic mold—co-employee liability—*Pleasant* exception—allegations sufficient**

Plaintiff's allegations that a co-employee responsible for building maintenance ignored toxic mold were sufficient to establish a *Pleasant* claim for co-employee liability, and the court should not have granted a 12(b)(6) dismissal of the *Pleasant* claim or related consortium and punitive damages claims.

**3. Workers' Compensation— toxic mold—*Woodson* claim—allegations insufficient**

Allegations about toxic mold in a workplace were not sufficient to state a *Woodson* claim. Plaintiff's illness is not relevant to an inquiry about defendant's knowledge prior to that injury, and the allegations in the complaint do not set out the types of symptoms, maladies, and illnesses that co-employees supposedly complained of to defendants.

**4. Landlord and Tenant— premises liability—toxic mold—corporate lessee and lessor**

The trial court erred by dismissing a premises liability claim against defendant landlord based on toxic mold for failure to state a claim where the landlord was a related but separate entity from plaintiff's employer which leased the premises, and the ownership allegations thus contained no insurmountable bar under workers' compensation exclusivity provisions or landlord-tenant law.

**5. Damages and Remedies— punitive—dismissal of underlying claim**

The trial court erred by dismissing a punitive damages claim where it also erred by dismissing the underlying claims.

CAMERON v. MERISEL, INC.

[163 N.C. App. 224 (2004)]

Appeal by plaintiffs from order entered 19 August 2002 by Judge Narley L. Cashwell in Superior Court, Wake County. Heard in the Court of Appeals 12 June 2003.

*Hunton & Williams, by Steven B. Epstein, for plaintiffs-appellants.*

*Cranfill, Sumner & Hartzog, L.L.P., by Gloria Taft Becker, for defendants-appellees.*

McGEE, Judge.

Tommy Davis Nathan Cameron (Mr. Cameron) and his wife Lisa Cameron (Ms. Cameron) (collectively plaintiffs) filed a complaint on 2 November 2001 alleging that they suffered injury from a toxic workplace maintained by Merisel, Inc. (Merisel), Merisel Properties, Inc. (Merisel Properties), Merisel Americas, Inc. (Merisel Americas), and Brian Goldsworthy (Goldsworthy) (collectively defendants). Specifically, plaintiffs alleged that defendants knew that the workplace at which Mr. Cameron was employed was contaminated with toxic molds. The complaint further alleged that defendants knew that several of Mr. Cameron's co-employees had suffered serious illnesses from toxic molds, but that defendants failed to warn Mr. Cameron and other employees of the molds or the dangers associated with the molds. Plaintiffs also alleged that despite defendants' knowledge of the molds, defendants failed to address the problem at the workplace premises. Plaintiffs alleged that due to defendants' failure to warn or to take action to correct the mold problem, Mr. Cameron sustained debilitating, irreversible, and disabling injuries.

Plaintiffs alleged in their complaint that Mr. Cameron was employed by Merisel Americas on 1 December 1998 at the company's remote customer call center located in Cary, North Carolina (Cary call center), which was operated by Merisel and Merisel Americas. Merisel or Merisel Americas had leased the entire building from its owner and had used the building for a remote customer call center since at least 1996. Goldsworthy was hired by Merisel or Merisel Americas as director of security for the Cary call center around 1996. Goldsworthy's responsibilities included the maintenance and upkeep of the workplace at the Cary call center.

Plaintiffs alleged that between 1996 and 1 December 1998 Merisel, Merisel Americas, and Goldsworthy became aware of the existence of toxic molds in the workplace but took no action to

remove the molds. Merisel Properties purchased the Cary call center building from its owner on 7 December 1998 and was aware of the existence of the toxic molds at that time. Defendants took no action to remove or alleviate the toxic molds in the Cary call center between 1 December 1998 and 31 December 1999, and in fact knowingly concealed their existence from the employees and occupants of the Cary call center.

Plaintiffs alleged that between 1996 and December 1999, numerous employees and occupants at the Cary call center complained to defendants about a variety of symptoms, maladies, and serious illnesses which defendants knew resulted from the complainants' exposure to the toxic molds. Soon after Mr. Cameron began working at the Cary call center he experienced dizziness. This dizziness eventually became chronic and resulted in nausea, blackouts, and falling spells. By the end of 1999, Mr. Cameron had been diagnosed with complete loss of the balance function of both inner ears and significant damage to the vestibular end organs of both ears. Throughout Mr. Cameron's employment at the Cary call center, defendants repeatedly assured him that the workplace and premises were safe and free from toxic molds. Based on these assurances, Mr. Cameron continued to work at the Cary call center through April 2000, until he was diagnosed as being completely disabled and was ordered by his doctors not to return to the Cary call center.

Based on these allegations, plaintiffs asserted the following claims: (1) under *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), against Merisel and Merisel Americas for intentionally exposing Mr. Cameron to toxic workplace conditions which they knew were substantially certain to cause severe bodily injury or death; (2) under *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985), against Goldsworthy for his willful, wanton, and gross disregard for the safety of his fellow employees by failing to maintain the Cary call center in a safe condition which resulted in the development of an unsafe and toxic environment; (3) for negligence against Merisel Properties for its failure to maintain its premises in a reasonably safe condition and allowing defects to exist; and (4) for punitive damages against all defendants. Ms. Cameron also filed a loss of consortium claim against all defendants.

Defendants filed a motion to dismiss dated 21 February 2002, pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6). Defendants argued that the complaint failed to state a claim under any exception to the exclusivity provisions of the Workers'

CAMERON v. MERISEL, INC.

[163 N.C. App. 224 (2004)]

Compensation Act and the trial court therefore had no jurisdiction to hear plaintiffs' claims. Defendants argued that "because the allegations [did] not amount to willful, wanton and reckless conduct, [resulting in] a constructive intent to injure [Mr. Cameron]," the complaint failed to state a claim against Goldsworthy under the exception created in *Pleasant*. Further, defendants argued that the complaint failed to state a claim under *Woodson*, "because the allegations [were] insufficient to show any willful, wanton, reckless or intentional conduct by defendants that [was] substantially certain to cause serious injury or death."

The trial court entered an order on 19 August 2002 dismissing plaintiffs' claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief could be granted and because the claims were barred by the applicable statute of limitations. Plaintiffs appeal.

I.

[1] We first note the trial court erred in dismissing plaintiffs' claims based on a one-year statute of limitations. Our Court determined that a *Woodson* claim is governed by the statute of limitations for intentional torts, N.C. Gen. Stat. § 1-54(3). *Alford v. Catalytica Pharms., Inc.*, 150 N.C. App. 489, 491-92, 564 S.E.2d 267, 269 (2002) (Thomas, J., dissenting). However, our Supreme Court reversed that decision *per curiam*, and adopted Judge Thomas' dissent that stated the catchall three-year statute of limitations, N.C. Gen. Stat. § 1-52(5), applied to *Woodson* claims. *Alford v. Catalytica Pharms, Inc.*, 356 N.C. 654, 577 S.E.2d 293 (2003). Applying a three-year statute of limitations, plaintiffs' *Woodson* claim is not time barred.

We also hold that plaintiffs' *Pleasant* claim is not barred by the statute of limitations. A claim brought pursuant to *Pleasant* is a common law action for willful negligence, and thus subject to the three-year statute of limitations in N.C. Gen. Stat. § 1-52 (2001). *Pleasant*, 312 N.C. 710, 325 S.E.2d 244; *see also Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993).

II.

[2] The purpose of the Workers' Compensation Act is to "provide certain limited benefits to an injured employee regardless of negligence on the part of the employer, and simultaneously to deprive the employee of certain rights he had at the common law." *Brown v. Motor Inns*, 47 N.C. App. 115, 118, 266 S.E.2d 848, 849, *disc. review*

*denied*, 301 N.C. 86, 273 S.E.2d 300 (1980). "In exchange for these 'limited but assured benefits,' the employee is generally barred from suing the employer for potentially larger damages in civil negligence actions and is instead limited exclusively to those remedies set forth in the Act." *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003) (quoting *Pleasant v. Johnson*, 312 N.C. 710, 712, 325 S.E.2d 244, 246-47 (1985)). However, there are limited exceptions to this general rule of exclusivity.

A.

Our Supreme Court recognized an exception in *Pleasant*, stating the "Workers' Compensation Act does not insulate a co-employee from the effects of his willful, wanton and reckless negligence." *Pleasant*, 312 N.C. at 717, 325 S.E.2d at 250. The Court explained that

> [c]onstructive intent to injure exists where conduct threatens the safety of others and is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified. Wanton and reckless negligence gives rise to constructive intent.

*Id.* at 715, 325 S.E.2d at 248 (citation omitted).

A complaint must be dismissed pursuant to a motion under N.C.G.S. § 1A-1, Rule 12(b)(6)

> when one or more of the following three conditions is satisfied: (1) when on its face the complaint reveals no law supports plaintiff's claim; (2) when on its face the complaint reveals the absence of fact sufficient to make a good claim; and (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim.

*Johnson v. Bollinger*, 86 N.C. App. 1, 4, 356 S.E.2d 378, 380 (1987). "Thus, a complaint is sufficient 'where no "insurmountable bar" to recovery appears on the face of the complaint and the complaint's allegations give adequate notice of the nature and extent of the claim.'" *Pastva v. Naegele Outdoor Advertising*, 121 N.C. App. 656, 659, 468 S.E.2d 491, 493, *disc. review denied*, 343 N.C. 308, 471 S.E.2d 74 (1996) (quoting *Johnson*, 86 N.C. App. at 4, 356 S.E.2d at 380, (quoting *Presnell v. Pell*, 298 N.C. 715, 719, 260 S.E.2d 611, 613 (1979)). "Notice of the nature and extent of the claim is adequate if the complaint contains 'sufficient information to outline the elements of [the] claim or to permit inferences to be

drawn that these elements exist.' " *Pastva*, 121 N.C. App. at 659, 468 S.E.2d at 493 (citations omitted).

In the present case, the allegations in the complaint are sufficient under this standard to support Mr. Cameron's claim for co-employee liability under *Pleasant*. The complaint sufficiently alleges Mr. Cameron's co-employee, Goldsworthy, engaged in "conduct [that] threaten[ed] the safety of others and [was] so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified." *Pleasant*, 312 N.C. at 715, 325 S.E.2d at 248. While Mr. Cameron must present evidence of these allegations at trial, we find the allegations in the complaint are sufficient to overcome a motion to dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) as to Mr. Cameron's *Pleasant* claim.

B.

[3] Another exception to the exclusivity rule in workers' compensation cases arose in *Woodson*, 329 N.C. 330, 407 S.E.2d 222, where the Supreme Court stated:

> We hold that when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act. Because, as also discussed in a subsequent portion of this opinion, the injury or death caused by such misconduct is nonetheless the result of an accident under the Act, workers' compensation claims may also be pursued. There may, however, only be one recovery.

*Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228. Thus, when an employer commits an action "tantamount to an intentional tort," employees' suits against their employer "are not barred by the exclusivity provisions of the [Workers' Compensation] Act." *Id.* at 341, 407 S.E.2d at 228. This is a stricter standard than that announced in *Pleasant* for co-employee liability. *Pendergrass*, 333 N.C. at 240, 424 S.E.2d at 395.

"The elements of a *Woodson* claim are: (1) misconduct by the employer; (2) intentionally engaged in; (3) with the knowledge that the misconduct is substantially certain to cause serious injury or

death to an employee; and (4) that employee is injured as a consequence of the misconduct." *Pastva*, 121 N.C. App. at 659, 468 S.E.2d at 494.

As previously discussed, a plaintiff has sufficiently met his burden to overcome a motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) " 'where no "insurmountable bar" to recovery appears on the face of the complaint and the complaint's allegations give adequate notice of the nature and extent of the claim.' " *Pastva*, 121 N.C. App. at 659, 468 S.E.2d at 493 (quoting *Johnson*, 86 N.C. App. at 4, 356 S.E.2d at 380) "Notice of the nature and extent of the claim is adequate if the complaint contains 'sufficient information to outline the elements of [the] claim or to permit inferences to be drawn that these elements exist.' " *Pastva*, 121 N.C. App. at 659, 468 S.E.2d at 493 (citations omitted).

Defendants contend that the complaint does not sufficiently allege knowledge by defendants of a substantial certainty of serious injury. In *Wiggins v. Pelikan, Inc.*, 132 N.C. App. 752, 513 S.E.2d 829 (1999) (citations omitted), our Court set forth multiple factors to be considered in determining substantial certainty of serious injury. However, in *Whitaker*, our Supreme Court stated "we explicitly reject the *Wiggins* test and rely solely on the standard originally set out by this Court in *Woodson v. Rowland.*" *Whitaker*, 357 N.C. at 556, 597 S.E.2d at 667.

Our Courts have focused on the "substantial certainty" aspect of the inquiry, not the "serious injury" aspect of the inquiry. *See Keith v. U.S. Airways, Inc.*, 994 F. Supp. 692, 696 (M.D.N.C. 1998). As discussed in *Keith*, our Courts have not defined the meaning of "serious injury" under *Woodson*. *Id. Black's Law Dictionary* 1371 (7th ed. 1999) defines "serious" as it relates to injury, illness, or accident, as "dangerous; potentially resulting in death or other severe consequences <serious bodily harm>." This definition does not give us definitive guidance as to whether a particular injury is "serious" in a particular case.

Cases previously determined by our Courts to involve risk of "serious" injury have included a plaintiff being crushed by a cave-in, *Woodson*, 329 N.C. at 334-36, 407 S.E.2d at 224-26; an employee's body parts being crushed by industrial machines, *Regan v. Amerimark Building Products*, 118 N.C. App. 328, 454 S.E.2d 849, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 189 (1995), *cert. denied*, 342 N.C. 659, 467 S.E.2d 723 (1996) and *Owens v. W. K. Deal Printing, Inc.*, 113

N.C. App. 324, 438 S.E.2d 440 (1994); and an employee being injured from a fall while washing windows without safety mechanisms, *Arroyo v. Scottie's Professional Window Cleaning*, 120 N.C. App. 154, 461 S.E.2d 13 (1995). In *Keith*, the federal district court noted that the risk of neck ailments and decreased range of motion did not qualify as "serious injury" for the purposes of a *Woodson* claim. 994 F. Supp. at 696-97. Although we agree with the district court's reasoning, its decision merely helps define the extremes of the continuum of injury and does not allow us to sufficiently classify the alleged serious illnesses plaintiff cites. We agree with the reasoning in criminal assault cases dealing with "serious injury" in which our Courts have declined to precisely define the term and, instead, consider the facts and circumstances of each case. *See State v. Williams*, 150 N.C. App. 497, 502, 563 S.E.2d 616, 619 (2002).

In this case, allegations in the complaint that several of Mr. Cameron's co-employees "had contracted serious illnesses" and had complained to all defendants of a variety of "symptoms, maladies, and serious illnesses" are insufficient allegations that Merisel and Merisel Americas had knowledge of a "substantial certainty" of "serious injury." Allegations in the complaint do not set out the types of symptoms, maladies, and illnesses that co-employees had allegedly complained of to defendants. In fact, the allegations themselves tend to indicate that the co-employees had different reactions to the alleged toxic mold in the Cary call center. It is insufficient for plaintiffs to simply make a conclusory statement that some of these illnesses were "serious," as opposed to general symptoms and maladies, without describing the illnesses or indicating the number of co-employees who suffered "serious" illnesses. *See Keith*, 994 F. Supp. at 696-97 ("Although Plaintiff alleges that Defendant knowingly risked 'Plaintiff being inflicted with . . . severe impairing [physical] . . . conditions caused by repetitive stress,' (Am. Compl.¶ 11), the facts she has pled do not make out a *Woodson* claim . . . ."). Further, Mr. Cameron's own alleged specific illness, while it can be relevant for other purposes, should not be included in this inquiry because the inquiry focuses on what defendants knew prior to Mr. Cameron's injury. Therefore, plaintiffs cannot "bootstrap" Mr. Cameron's claim by pointing to the specific illness he contracted to indicate prior knowledge by defendants. Where the complaint simply alleges defendants knew co-employees had varying reactions to an alleged harm without any further description of those reactions, it is insufficient to meet the standard under *Woodson*. Therefore, we affirm the trial court's dismissal of Mr. Cameron's *Woodson* claim against Merisel and Merisel Americas.

CAMERON v. MERISEL, INC.

[163 N.C. App. 224 (2004)]

III.

[4] Plaintiffs also seek recovery under a premises liability theory, alleging that:

15. On or about December 1, 1998, [Mr. Cameron] became employed by Merisel Americas at the remote customer call center operated by Merisel and Merisel Americas at 305 Gregson Drive in Cary, North Carolina . . . .

16. Upon information and belief, Merisel and/or Merisel Americas had leased the entirety of the Cary facility from its owner, and had operated the remote customer call center there, since at least 1996.

. . .

18. Upon information and belief, between 1996 and December 1, 1998, Merisel [and] Merisel Americas . . . had become aware of the existence of several toxic molds within the workplace at the Cary facility.

19. Upon information and belief, between 1996 and December 1998, Merisel [and] Merisel Americas . . . failed and/or refused to take action to remediate these toxic molds.

. . .

21. Upon information and belief, Merisel Properties purchased the Cary facility from its existing owner on or about December 7, 1998.

22. Upon information and belief, Merisel Properties became aware of the existence of the toxic molds within the Cary facility on or before December 7, 1998.

. . .

27. Upon information and belief, despite the complaints of employees and occupants of the building and [the] knowledge [of Merisel Properties, Merisel, and Merisel Americas] that the toxic molds were the source of their complaints [of illness], [they] concealed their knowledge of the existence of the toxic molds, failed to warn employees and occupants of the facility of their existence, and failed and refused to take any action to remediate them.

Based on our standard of review for motions to dismiss, the complaint does not reveal an absolute bar to plaintiffs' recovery under a

premises liability theory. Our Court held in *Phillips v. Stowe Mills, Inc.*, 5 N.C. App. 150, 154, 167 S.E.2d 817, 820 (1969), that the owner of a building, a parent corporation of the tenant employer, could not invoke the exclusivity provisions of the Workers' Compensation Act to bar recovery by an injured employee simply because the employer was a wholly owned subsidiary of the parent corporation. This Court concluded that, because the parent corporation was not the employer of the plaintiff and the employer corporation and parent corporation were separate entities, the Workers' Compensation Act's exclusivity bar did not apply to the parent corporation. *Id.* The allegations in the present case do not reveal that Merisel Properties is anything more than a related, but separate entity, from Merisel and Merisel Americas, and thus does not show at this point an absolute bar to recovery due to the exclusivity provisions of the Workers' Compensation Act.

Our Supreme Court abolished the distinction between invitees and licensees in *Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998). An owner or occupier of land owes a "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Id.* at 632, 507 S.E.2d at 892. Plaintiffs have alleged that Merisel Properties was the owner of the building where the Cary call center was located. Plaintiffs have further alleged that Merisel Properties knew of the alleged toxic mold but did nothing to warn or protect Mr. Cameron and other co-employees and occupants of the Cary call center from the dangers of the toxic mold.

Merisel Properties, Inc. argues that it should be protected under landlord tenant law because

> "[o]rdinarily, the doctrine of *caveat emptor* applies to the lessee[.] To avoid foreclosure under this doctrine in an action for tortious injury, he must show that there is a latent defect known to the lessor, or which he should have known, involving a menace or danger, and a defect of which the lessee was unaware or could not, by the exercise of ordinary diligence, discover, the concealment of which would be an act of bad faith on the part of the lessor."

*Phillips*, 5 N.C. App. at 154, 167 S.E.2d at 820 (citations omitted). A landlord therefore does not have a duty to warn a tenant of a defect on the premises known to the tenant, and the landlord ordinarily cannot be held liable to the tenant for a defect the tenant knew about when the tenant leased the premises. *Id.* Merisel Properties argues

that under *Phillips*, Merisel Properties cannot be liable to the employees of a tenant if it could not be liable to the tenant itself for injuries allegedly arising from a defect known to the tenant. *See id.*

However, our Courts have recognized several exceptions, including where: (1) a landlord leased the premises in a ruinous condition, *Vera v. Five Crow Promotions, Inc.*, 130 N.C. App. 645, 650-51, 503 S.E.2d 692, 696-97 (1998); (2) there was a contract that obligated a landlord to repair the premises, *Wellons v. Sherrin*, 217 N.C. 534, 540, 8 S.E.2d 820, 823 (1940); (3) a landlord authorized a wrong, *id.*; and (4) somewhat similarly, where a landlord exercised control over the premises despite the tenant's occupancy, *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 478, 562 S.E.2d 887, 895 (2002).

In deciding a Rule 12(b)(6) motion to dismiss, we must determine whether, on the basis of the allegations in the complaint, an " 'insurmountable bar' to recovery appears on the face of the complaint and the complaint's allegations give adequate notice of the nature and extent of the claim." *Pastva*, 121 N.C. App. at 659, 468 S.E.2d at 493 (citations omitted). We hold that the allegations of the complaint in this case do not present such an insurmountable bar and have put Merisel Properties on notice of the nature and extent of plaintiffs' claim for premises liability.

IV.

[5] Having determined the trial court erred in dismissing plaintiffs' *Pleasant* and premises liability claims, it was also error to dismiss plaintiffs' claims for punitive damages as to Goldsworthy. *Regan*, 118 N.C. App. at 332, 454 S.E.2d at 852 ("Plaintiff has alleged willful and wanton misconduct and has specifically requested punitive damages. This gives defendants adequate notice of plaintiff's claim for punitive damages.") It was also error for the trial court to dismiss Ms. Cameron's claim for loss of consortium as to Goldsworthy and Merisel Properties. *See Sloan v. Miller Building Corp.*, 128 N.C. App. 37, 40-41, 493 S.E.2d 460, 462-63 (1997). However, as we have held that the trial court did not err in dismissing plaintiffs' *Woodson* claim against Merisel and Merisel Americas, we affirm the dismissal of plaintiffs' claims for punitive damages and also Ms. Cameron's claim for loss of consortium against Merisel and Merisel Americas. We also affirm the trial court's dismissal of the punitive damages claim against Merisel Properties, since plaintiffs alleged only a premises liability negligence claim as to Merisel Properties.

In summary, (1) plaintiffs' *Woodson* and *Pleasant* claims are not time barred; (2) we affirm the trial court's dismissal of plaintiffs' *Woodson* claim as to Merisel and Merisel Americas, as well as the related claims for punitive damages and loss of consortium as to those defendants; (3) we reverse the trial court's dismissal of plaintiffs' *Pleasant* claim against Goldsworthy and the related loss of consortium and punitive damages claims; (4) we reverse the trial court's dismissal of plaintiffs' premises liability claim against Merisel Properties and the related loss of consortium claim; and (5) we affirm the trial court's dismissal of plaintiffs' punitive damages claim against Merisel Properties. We remand plaintiffs' *Pleasant* claim against Goldsworthy and the corresponding loss of consortium and punitive damages claims, as well as plaintiffs' premises liability claim against Merisel Properties and the corresponding loss of consortium claim.

Affirmed in part; reversed and remanded in part.

Judges BRYANT and GEER concur.