PROCAR II, INC., Plaintiff v. TONY M. DENNIS and BETTY D. LAMBERT, Defendants

No. COA11-1018

(Filed 7 February 2012)

**Contracts—insufficient consideration—not enforceable—dismissal proper**

The trial court did not err by dismissing plaintiff's case with prejudice where the trial court correctly determined that an agreement between the parties was not supported by adequate consideration, and that the agreement was not enforceable between the parties.

Appeal by plaintiff from judgment entered 15 February 2011 by Judge W. Erwin Spainhour in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 January 2012.

*June K. Allison and William A. Navarro, attorneys for plaintiff.*

*Derek P. Adler and Troy J. Stafford, attorneys for defendants.*

ELMORE, Judge.

Procar II, Inc. (plaintiff) appeals a judgment for involuntary dismissal with prejudice. After careful consideration, we affirm.

In 1995, Robert Brent McKinney formed Procar, Inc., a company that was engaged in framing contracting and concrete work. In 2005, McKinney formed Procar II, Inc. (plaintiff). At this time, Procar, Inc. began performing primarily concrete work, and plaintiff performed primarily framing work. Both companies were owned entirely by McKinney, and McKinney served as the sole director and president of both Procar, Inc. and plaintiff. The two companies also shared 1) employees, 2) an office, 3) a mailing address, 4) a telephone number, 5) a fax number, and 6) an email address.

For many years, Procar, Inc. and plaintiff provided labor to Southeastern Material, Inc. (Southeastern). Betty Lambert (defendant Lambert) was the secretary and treasurer of Southeastern. Tony M. Dennis (defendant Dennis) was the president of Southeastern. In paying invoices to Procar, Inc. and to plaintiff, Southeastern made its checks payable to simply "Procar." On 16 June 2008, defendants both signed a "Personal Guaranty Agreement" (the agreement) obligating themselves to personally guarantee the indebtedness of Southeastern

"due to and owing to Procar, Inc. and/or any of its divisions, subsidiaries, and affiliates including interest and Attorney's Fees." At the time the agreement was executed, the amount owed by Southeastern to plaintiff was approximately $611,500.00. Plaintiff continued to extend credit to Southeastern after the agreement was executed.

On 30 December 2009, Southeastern filed for bankruptcy protection. On 5 February 2010, plaintiff filed a complaint seeking to recover from defendants $515,724.97, the total amount allegedly owed to plaintiff by Southeastern at the time of the bankruptcy filing. On 7 May 2010, defendants filed an answer and a motion to dismiss plaintiff's claim for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6). In that motion, defendants asserted in part that the agreement was not supported by adequate or sufficient consideration. On 15 October 2010, plaintiff filed a motion for summary judgment pursuant to Rule 56, asserting that there was no genuine issue as to any material fact. On 23 November 2010, defendants filed their own motion for summary judgment pursuant to Rule 56. On 23 December 2010, the trial court entered an order denying both parties' motions for summary judgment. On 26 January 2011, the case came on for trial. Following the trial, the trial court entered a judgment for involuntary dismissal. In that judgment the trial court concluded that there was no valid and enforceable contract between plaintiff and defendants because 1) there was no consideration for the agreement and 2) plaintiff was not a subsidiary, division, or affiliate of Procar, Inc., and therefore plaintiff could not seek to enforce the agreement. Plaintiff now appeals.

Plaintiff first argues that it is an affiliate of Procar, Inc., and that it is entitled to enforce the agreement. We agree in part with plaintiff's argument.

This Court notes that what constitutes an "affiliate" appears to be an unsettled area of our law. Both parties in their briefs direct this Court's attention to cases from other jurisdictions. However, Black's Law Dictionary defines an "affiliate" as "a corporation that is related to another corporation by shareholding or other means of control: a subsidiary, parent or sibling corporation." *Black's Law Dictionary*, (8th ed. 2004).

Here, McKinney was the sole owner, director, and president of both Procar, Inc. and plaintiff. He ran both companies from the same office, with the same telephone number, mailing address, fax number, and email address. He also staffed both companies with the same

PROCAR II, INC. v. DENNIS

[218 N.C. App. 600 (2012)]

employees, and he titled them with essentially the same name. Furthermore, he accepted checks payable simply to "Procar" as payment for work done by both Procar, Inc. and plaintiff. Based on these facts, we are persuaded to classify Procar, Inc. and plaintiff as sibling corporations. Thus, under the aforementioned definition, Procar, Inc. and plaintiff would be considered "affiliates."

However, whether plaintiff, as an affiliate of Procar, Inc., could enforce the agreement turns upon whether the underlying agreement itself was enforceable. Therefore, we will turn our attention to plaintiff's second argument, that the agreement was supported by adequate consideration, because it covered future extensions of credit.

As a general rule, "a guaranty [agreement] executed independently of the main debt must be supported by independent consideration." *International Harvester Credit Corp. v. Bowman*, 69 N.C. App. 217, 221, 316 S.E.2d 619, 621 (1984) (citation omitted). However, in *Gillespie v. De Witt*, this Court held that "when the guaranty which is separate from the original indebtedness covers future as well as existing indebtedness, there is consideration for the guaranty apart from the principle indebtedness which was previously in existence." 53 N.C. App. 252, 280 S.E.2d 736 (1981).

Here, plaintiff sought payment for indebtedness incurred before the agreement was executed. The trial court found that the agreement did not apply to both existing and future debts of Southeastern, and therefore the agreement was not supported by adequate consideration. On appeal, plaintiff argues that the language of the agreement does not state "*now* due to and owing" or "*currently* due to and owing," and therefore it should be plainly interpreted as meaning "*whenever* due and owing." Based on this interpretation, plaintiff argues that the agreement applied to future extensions of credit. We disagree.

"When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of construction, cannot reject what the parties inserted or insert what the parties elected to omit." *Taylor v. Gibbs*, 268 N.C. 363, 365, 150 S.E.2d 506, 507 (1966) (quotations and citations omitted). In *De Witt* this Court held that a guaranty agreement applied to future extensions of credit when that agreement stated "now owing or due, or which may **hereafter**, from time to time, be owing or due, and **howsoever heretofore or hereafter created or arising or evidenced**." 53 N.C. App. 252, 261, 280 S.E.2d 736, 742-43 (1981) (quotations omitted) (emphasis added).

Here, the agreement makes no mention of any future obligations; it states simply "due to and owing." Furthermore, as plaintiff has correctly argued in its brief, this Court may not insert any terms into the agreement. Thus, we reject plaintiff's suggestion that the agreement should be interpreted as "*whenever* due to and owing." Without future language, the agreement falls short of the example evidenced in *De Witt.* Accordingly, we conclude that the agreement did not apply to future extensions of credit. Thus, the trial court correctly determined that the agreement was not supported by adequate consideration, and that the agreement is not enforceable between the parties.

Affirmed.

Judges BRYANT and ERVIN