IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-646

Filed 21 May 2025

New Hanover County, No. 23CVS002221-640

ERIK NELSON, Plaintiff,

v.

LLOYD T. SMITH and JENNIFER G. SMITH, Defendants.

Appeal by Plaintiff from order entered 27 March 2024 by Judge Quintin McGee in New Hanover County Superior Court. Heard in the Court of Appeals 26 February 2025.

> *Perry, Brandt & McLemore, by Holden K. McLemore, and Terrazas PLLC, by Kevin J. Terrazas, pro hac vice, for Plaintiff-Appellant.*
>
> *Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones and G. Anderson Stein, for Defendants-Appellees.*

COLLINS, Judge.

Plaintiff Erik Nelson appeals from the trial court's order granting Lloyd T. Smith and Jennifer G. Smith's (collectively, "Defendants") motion to dismiss for lack of subject matter jurisdiction. Plaintiff argues that the trial court erred by granting Defendants' motion to dismiss because the exclusivity provision of the Workers' Compensation Act does not bar Plaintiff's claim and the parties' release agreement does not release Defendants from liability. For the following reasons, we reverse the trial court's order granting Defendants' motion to dismiss.

## I.    Background

Plaintiff commenced this action on 3 July 2023 by filing a complaint against Defendants.  Defendants filed a motion to dismiss and a memorandum in support of that motion with attachments, including Plaintiff's Form 18 filed with the North Carolina Industrial Commission, a document listing Cortech Solutions, Inc.'s insurance carriers, and the Commission's order approving Plaintiff's Compromise Settlement Agreement with Cortech.  The facts below are drawn from the parties' filings:[1]

Plaintiff began his employment with Cortech in February 2011.  Defendant Lloyd T. Smith was the President of Cortech and Defendant Jennifer G. Smith was the Secretary and Treasurer.  Plaintiff worked at Cortech's principal office ("Workplace"), located in Wilmington, North Carolina.  The Workplace was not owned by Cortech; Defendants in their individual capacities owned the commercial property ("Property") in which the Workplace was located.  Defendants were the landlords of the Workplace.  Cortech was one of several commercial tenants who leased office space in the Property from Defendants.

Throughout the course of Plaintiff's employment with Cortech, the Workplace flooded in some capacity approximately fifteen times.  While working, Plaintiff

---

[1] In deciding a motion under North Carolina Rule of Civil Procedure 12(b)(1), the court need not confine itself to the face of the pleadings and may consider matters outside of the pleadings. *Harris v. Matthews*, 361 N.C. 265, 271 (2007).

frequently smelled mildew in the Workplace.

Several months after he started working at the Workplace, in the summer of 2011, Plaintiff began experiencing various flu-like symptoms, including dizziness and cognitive difficulty. In August 2012, Plaintiff was diagnosed with Lyme Disease. Plaintiff's symptoms were ongoing; in May 2017, Plaintiff asked Cortech if he could work from home on the days he did not feel well or was undergoing medical treatment. Cortech denied his request.

In September 2018, Hurricane Florence caused significant damage to the Property, and in the weeks following the hurricane, Plaintiff noticed what he believed was mold emerging from the baseboards of the Property. Defendants never closed the Property or Workplace to allow for proper remediation, nor did they, to Plaintiff's knowledge, consult any professionals regarding the extent of the damage.

In or around March 2019, Plaintiff's doctor requested that Plaintiff order an Environmental Relative Moldiness Index test. Plaintiff paid for the test and performed it in accordance with its instructions. For the test, Plaintiff took dust samples from various areas around his personal workspace, including his desk, phone, and shelves. The test found that Plaintiff's workspace was "beyond the highest level of classification, level 'Q4', for the presence of mold." The results indicated that the tested areas around Plaintiff's workspace were not safe and that "[r]e-occupancy is ill-advised until further remediation and re-assessment are conclusive."

Plaintiff immediately reported the test results to Defendants. Because Defendants took no action, Plaintiff filed a complaint with the Occupational Safety and Health Administration. In response to this complaint, Defendants arranged for an inspection and mold testing of the Workplace in June 2019. The results of that testing indicated that mold was present throughout approximately eighty percent of the Workplace.

Plaintiff filed a Form 18, "Notice of Accident to Employer," with the Commission on 12 August 2019 for his injuries resulting from "ongoing exposure to water damage and mold." One month later, in September 2019, Cortech terminated Plaintiff from his employment.

Plaintiff and Cortech entered into a compromise settlement agreement wherein Cortech agreed to pay Plaintiff $25,000 for any injuries giving rise to his claim; the Commission approved the agreement on 16 March 2021. Plaintiff also signed a general release agreement, wherein Plaintiff agreed to "to resolve all current and future disputes concerning Plaintiff's employment with Cortech Solutions, Inc. along with all of its affiliates and subsidiaries" in exchange for additional consideration.

Plaintiff filed a complaint against Defendants on 3 July 2023 for negligence, gross negligence, and punitive damages. Plaintiff alleged that he suffered various health issues as a result of toxic mold exposure while working at the Workplace, "including immune system dysregulation with autoimmune conditions resulting,

hormone dysregulation, cardiac complications, kidney damage, neurologic sequelae identified within an MRI as diffuse white matter damage, weight loss, fatigue, [and] nausea[.]" Defendants moved to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6). After a hearing, the trial court granted Defendant's motion under Rule 12(b)(1). Plaintiff appeals.

## II.    Discussion

Plaintiff argues that the trial court erred by granting Defendants' motion to dismiss for lack of subject matter jurisdiction because the exclusivity provision of the Workers' Compensation Act does not bar Plaintiff's claim and the release agreement does not release Defendants from further liability.

"A Rule 12(b)(1) motion to dismiss represents a challenge to the trial court's subject matter jurisdiction over a plaintiff's claims." *Marlow v. TCS Designs, Inc.*, 288 N.C. App. 567, 572 (2023); N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (2023). This Court reviews a trial court's grant of a motion to dismiss for lack of subject matter jurisdiction de novo, "under which it views the allegations as true and the supporting record in the light most favorable to the non-moving party[.]" *United Daughters of the Confederacy v. City of Winston-Salem*, 383 N.C. 612, 624 (2022) (cleaned up). "[M]atters outside the pleadings . . . may be considered and weighed by the court in determining the existence of jurisdiction over the subject matter." *Tart v. Walker*, 38 N.C. App. 500, 502 (1978) (citation omitted). "Under a *de novo* review, th[is] [C]ourt considers the matter anew and freely substitutes its own judgment for that of the

lower tribunal." *McAdoo v. Univ. of N.C. at Chapel Hill*, 225 N.C. App. 50, 51 (2013) (quotation marks and citation omitted).

## A. Exclusivity Provision of the Workers' Compensation Act

Plaintiff contends that the exclusivity provision of the Act does not bar his claim because Defendants, in their individual capacities as owners of the Property and landlords of the Workplace, are separate from Cortech, Plaintiff's employer. We agree.

The exclusivity provision of the Act provides, in pertinent part,

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee . . . shall exclude all other rights and remedies of the employee . . . as against the employer at common law or otherwise on account of such injury or death.

N.C. Gen. Stat. § 97-10.1 (2023). In other words, the Act "provide[s] certain limited benefits to an injured employee regardless of negligence on the part of the employer, and simultaneously [] deprive[s] the employee of certain rights he had at the common law." *Brown v. Motor Inns of Carolina, Inc.*, 47 N.C. App. 115, 118 (1980) (citations omitted).

"In exchange for these limited but assured benefits, the employee is generally barred from suing the employer for potentially larger damages in civil negligence actions and is instead limited exclusively to those remedies set forth in the Act." *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556 (2003) (quotation marks and

citations omitted). However, this general rule of exclusivity only bars the employee from bringing additional claims against *his employer*, not separate entities.

For example, in *Phillips v. Stowe Mills, Inc.*, "the owner of a building, a parent corporation of the tenant employer, could not invoke the exclusivity provisions of the [] Act to bar recovery by an injured employee simply because the employer was a wholly owned subsidiary of the parent corporation." *Cameron v. Merisel, Inc.*, 163 N.C. App. 224, 233 (2004) (*citing Phillips*, 5 N.C. App. 150, 154 (1969)). "This Court concluded that, because the parent corporation was not the employer of the plaintiff and the employer corporation and parent corporation were separate entities, the [] Act's exclusivity bar did not apply to the parent corporation." *Id.*

Similarly, in *Cameron v. Merisel, Inc.*, the plaintiff was employed by Merisel, Inc. and Merisel Americas, Inc., who leased the building where plaintiff worked from Merisel Properties, Inc. 163 N.C. App. at 232. The plaintiff filed a negligence claim against Merisel Properties after he suffered serious medical complications as a result of alleged toxic mold exposure within his workplace. *Id.* at 225-26. This Court held, "The allegations in the present case do not reveal that Merisel Properties is anything more than a related, but separate entity, from Merisel and Merisel Americas, and thus does not show at this point an absolute bar to recovery due to the exclusivity provisions of the [] Act." *Id.* at 233.

Here, Plaintiff alleges:

> 2. The parties against whom this action is brought include

the owner/landlord of the commercial property (the "Property") located at 1409 Audubon Blvd., Wilmington, NC 28403.

. . . .

4. At all times relevant herein, Plaintiff timely reported and notified Defendants of all defects, issues, and other concerns he experienced during the course of his employment at the Property.

5. At all times relevant hereto, Defendants knew that the [W]orkplace was contaminated with toxic mold and that exposure to the toxic mold in the [W]orkplace was substantially certain to cause serious injury or death of those exposed to the toxic mold.

6. Nevertheless, Defendants failed to take any appropriate measures to ensure the proper maintenance and management of the [W]orkplace conditions.

. . .

10. . . . From 2011 through 2019, Plaintiff worked for Cortech Solutions, Inc. [] which, based upon information and belief, was one of several commercial tenants that leased space in the Property owned by Defendants.

11. . . . At all times relevant hereto, Defendants were the owners/landlords of the Property. . . . Additionally, at all times relevant hereto, Defendant Lloyd T. Smith was the President of Cortech and Defendant Jennifer G. Smith was the Secretary and Treasurer of Cortech.

Although Defendant Lloyd T. Smith was the President of Cortech and Defendant Jennifer G. Smith was the Secretary and Treasurer of Cortech, Defendants were not acting as Cortech when they engaged in the duties associated with their ownership of the Property. Defendants owned and operated the Property—

where Cortech leased office space—in their individual capacities; they worked for and operated Cortech as a separate business. As in *Phillips* and *Cameron*, the allegations in Plaintiff's complaint reveal that Defendants are separate from Cortech, and thus do not show, at this pleading stage of the litigation, "an absolute bar to recovery due to the exclusivity provisions of the [] Act." *Id.*

## B. General Release Agreement

Plaintiff next argues that the release agreement does not release Defendants from liability because, when acting as owners of the Property and landlords of the Workplace, Defendants were not acting in their official capacities within the scope of their employment with Cortech.

"Releases are contractual in nature and their interpretation is governed by the same rules governing interpretation of contracts." *Chemimetals Processing, Inc. v. Schrimsher*, 140 N.C. App. 135, 138 (2000) (citation omitted). "The scope and extent of the release should be governed by the intention of the parties, which must be determined by reference to the language, subject matter[,] and purpose of the release." *Id.* (citation omitted).

Here, the release agreement was "made and entered into by Erik Nelson ("Plaintiff") to resolve all current and future disputes concerning Plaintiff's employment with Cortech Solutions, Inc. along with all of its affiliates and subsidiaries (collectively, "Company")." The agreement provided, in pertinent part,

> Plaintiff . . . hereby releases and forever discharges

> [Cortech along with all of its affiliates and subsidiaries], and its respective officers, directors, present and former Board members, present and former employees, agents, insurance companies or risk pools, successors and assigns . . . from any and all claims, actions or causes of action, demands, damages, costs, interest, judgments, expenses, liabilities, attorneys' fees and legal costs, of any nature whatsoever, without limitation, specifically including any and all claims, known and unknown, arising out of or in any way related to or growing out of [Plaintiff's] employment with, or resignation from, [Cortech]. . . . *This release is intended to release and releases no party other than Cortech, along with all of its affiliates and subsidiaries* [], *and its officers and employees, acting in their official capacities in the course and scope of their employment for Cortech and none other.*

(emphasis added).

The plain language of the release agreement releases "no party other than Cortech, along with all of its affiliates and subsidiaries" from "all claims, actions, or causes of action" related to Plaintiff's employment with Cortech. As explained above, when engaging in the duties associated with their ownership of the Property, Defendants are separate from Cortech. Defendants do not argue that they are a subsidiary of Cortech. The question is therefore whether the allegations in Plaintiff's complaint and evidence before the trial court support a conclusion that Defendants are an affiliate of Cortech.

An affiliate is "a corporation that is related to another corporation by shareholding or other means of control: a subsidiary, parent[,] or sibling corporation." *Procar II, Inc. v. Dennis*, 218 N.C. App. 600, 601 (2012) (quoting *Affiliate, Black's Law*

*Dictionary* (8th ed. 2004)). In *Procar II*, this Court concluded that two companies with the same "sole owner, director, and president" were properly classified as "sibling corporations" and therefore were considered "affiliates." *Id.* at 601-02.

Here, Plaintiff alleged,

> 10. . . . From 2011 through 2019, Plaintiff worked for Cortech Solutions, Inc. ("Cortech") which, based upon information and belief, was one of several commercial tenants that leased space in the Property owned by Defendants.
>
> 11. Based upon information and belief, Defendant Lloyd T. Smith and his wife, Defendant Jennifer G. Smith, are residents of the State of North Carolina with a principal place of residence located in New Hanover County, North Carolina. At all times relevant hereto, Defendants were the owners/landlords of the Property located at 1409 Audubon Boulevard, Unit B-1, Wilmington, North Carolina 28403. Additionally, at all times relevant hereto, Defendant Lloyd T. Smith was the President of Cortech and Defendant Jennifer G. Smith was the Secretary and Treasurer of Cortech.

These allegations essentially allege that Defendants owned the Property in their individual capacities. On appeal, Defendants argue that they "are Plaintiff's employer, and at the least, in their capacity as individuals owning the [Property], they are affiliates of Cortech." Defendants cite no authority in support of this statement, and we can find no authority to support a conclusion that an individual can be an "affiliate" of a corporation.

Additionally, the plain language of the agreement releases the officers and employees of Cortech only to the extent they were "acting in their official capacities

in the course and scope of their employment for Cortech and none other." In the context of Plaintiff's negligence claim against them, Defendants were not acting within their official duties as Cortech's officers but were instead acting in their capacities as owners of the Property and landlords of the Workplace. The release agreement does not mention Defendants by name nor does it reference Cortech's landlord in the list of individuals covered by the release.

Based upon the plain language and express terms of the release agreement, viewed in the light most favorable to Plaintiff at this pleading stage of the litigation, Plaintiff is not precluded from asserting a negligence claim against Defendants in their capacities as owners of the Property and landlords of the Workplace.

## C. Insurmountable Bar

Finally, Plaintiff argues that, under Rule 12(b)(6), there was no insurmountable bar to Plaintiff's recovery based upon the allegations made in his complaint.

To properly preserve an issue for appellate review, "a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). However, "[i]t is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." *Id.*

Here, although Defendants filed a motion to dismiss pursuant to Rules 12(b)(1)

and 12(b)(6), the trial court granted Defendants' motion pursuant only to Rule 12(b)(1). As there is no ruling upon Defendants' motion to dismiss pursuant to Rule 12(b)(6), any argument on appeal pertaining to such rule is not properly before us and is dismissed.

## III. Conclusion

Because Cortech and Defendants are separate entities, neither the exclusivity provision of the Act nor the parties' release agreement bars Plaintiff's negligence claim against Defendants. Accordingly, the trial court erred by granting Defendants' motion to dismiss.

REVERSED.

Judges ZACHARY and GORE concur.