·LAFAYETTE TRANSPORTATION SERVICE, INC. v. THE COUNTY OF ROBESON, SAM R. NOBLES, COMMISSIONER OF ROBESON COUNTY, HOWARD M. COOPER, COMMISSIONER OF ROBESON COUNTY, HERMAN DIAL, COMMISSIONER OF ROBESON COUNTY, CARL L. BRITT, COMMISSIONER OF ROBESON COUNTY, J. A. SINGLETON, JR., COMMISSIONER OF ROBESON COUNTY, GEORGE R. PATE, COMMISSIONER OF ROBESON COUNTY, AND W. D. WELLINGTON, COMMISSIONER OF ROBESON COUNTY, SANITATION SERVICE, INC., AND JAMES PORTER

No. 26

(Filed 1 June 1973)

1. Counties § 2— power to adopt ordinances regulating waste disposal

A county has no inherent power to adopt ordinances relating to the collection and disposal of garbage and other waste material, having only those legislative powers which the General Assembly has seen fit to confer upon it.

2. Statutes § 5— statutory construction

Unless the contrary appears, it is presumed that the Legislature intended the words of a statute to be given the ordinary meaning which they had in ordinary speech at the time the statute was enacted and that no word of any statute is a mere redundant expression.

3. Counties § 2— authority to grant franchise to collect garbage — statutes

The grant of powers to boards of county commissioners by G.S. 153-10.1 is, by virtue of G.S. 153-275, supplementary to the grant made by G.S. 153-272 and the two statutes must be construed together.

4. Counties § 2— franchise to collect garbage — definition of garbage

The trial court did not err in limiting the definition of "garbage" as used in G.S. 153-272, the statute authorizing counties to grant

Transportation Service v. County of Robeson

exclusive franchises for the collection and disposal of "garbage," to "all putrescible solid wastes, including vegetable matter, animal offal and carcasses of small animals (100 pounds or less), but excluding human body wastes, animal manure, and recognizable industrial by-products," and the court properly concluded that county commissioners have no authority to grant an exclusive franchise to collect and dispose of wastes not falling within such definition of "garbage." G.S. 153-10.1; G.S. 130-166.16; G.S. 160A-192.

APPEAL by defendants from the Court of Appeals, which affirmed the judgment of *McKinnon, J.*, at the 19 July 1972 non-jury Session of ROBESON, reported in 17 N.C. App. 210, 193 S.E. 2d 464.

The plaintiff corporation is engaged in the business of collecting and disposing of solid waste pursuant to contracts with its customers. It brought this action to have declared null and void the action of the Board of Commissioners of Robeson County purporting to grant to the defendants Porter and Sanitation Service, Inc., exclusive franchises for the collection of trash in those parts of the county outside of incorporated cities and towns, and to compel the Board to issue to plaintiff a letter of approval, which letter is a prerequisite to inspection by the State Board of Health of the plaintiff's solid waste disposal facility. The matter was heard in the Superior Court without a jury. The court made findings of fact to which no exception is taken. These findings, summarized and renumbered, are:

1. The plaintiff, a North Carolina corporation with its principal office in Cumberland County, has been engaged in the business of solid waste collection and disposal for several years.

2. Pursuant to its contracts with B. F. Goodrich Company and with TexFi Industries, a textile manufacturer, the plaintiff collects from the plants of those companies waste, including industrial scrap, cardboard cartons, paper and waste from lunchroom facilities, the latter including food containers. The Goodrich plant lies in the portion of Robeson County covered by the franchise granted to Porter. The TexFi plant lies in the portion of the county covered by the franchise granted to Sanitation Service, Inc.

3. The plaintiff is the owner of land in Robeson County on which it has prepared a landfill for the disposal of solid waste. It has made a substantial investment in such land and in equipment for use in its operations.

4. Having received complaints from various groups in the county concerning the dumping of waste on highways and on private property and having determined that for the county to engage in the operation of landfills for the disposal of such waste would necessitate additional taxes, the Board of Commissioners, on 6 December 1971, granted to the defendant Porter an exclusive franchise to collect "trash and garbage" in approximately one-fourth of the county and to the defendant Sanitation Service, Inc., an exclusive franchise for the collection and disposal of "trash and garbage" in the remainder of the county, outside of incorporated cities and towns. (The court's findings do not suggest that any action of the plaintiff contributed to the conditions to which the complaints related.)

5. The defendant Porter and the defendant Sanitation Service, Inc., have made substantial investments in equipment and property for the purpose of carrying on the services to which their respective franchises relate. Sanitation Service, Inc., has established a landfill for the disposition of materials collected pursuant to its franchise and by contract permits Porter to use it. Porter is able and willing to serve the Goodrich Company but has no agreement with it for such service. Sanitation Service, Inc., is ready and able to provide service to all in the territory described in its franchise.

6. The plaintiff applied to the County Tax Collector for a license, required by the county ordinance of one engaged in the business of collecting waste. It was denied such license because of the granting of the exclusive franchises to Porter and Sanitation Service, Inc. The plaintiff also applied to the County Commisioners for an approval letter pursuant to the rules and regulations of the State Board of Health, which application was denied because of the existence of the said exclusive franchise agreements.

7. Rules and regulations providing standards for solid waste disposal were adopted by the State Board of Health on 11 March 1971 and have been in effect since that date. Rules and regulations governing the storage, collection, transportation and disposal of refuse were adopted by the Robeson County Board of Health on 28 January 1971 and have been in effect since 1 May 1971.

8. The plaintiff has not shown that it has engaged in or plans to engage in garbage collection in Robeson County other

than as such collection is involved in the collection of industrial waste from the Goodrich Company and TexFi Industries.

9. There has been no showing of other than good faith on the part of the Board of Commissioners of the county.

The Superior Court thereupon made the following conclusions of law, to each of which, except Conclusion No. 5, the defendants except:

### CONCLUSIONS OF LAW

"1. The Court is of the opinion that under the authority of G.S. 153-272 and the Resolutions and Ordinance adopted by the Board of Commissioners of Robeson County the power of the Board to issue licenses to collect and/or dispose of garbage; to prohibit the collection and/or disposal of garbage by unlicensed persons; and to grant to licensed persons the exclusive right to collect and/or dispose of garbage within a specified area, is limited to 'garbage' as given its ordinary and accepted meaning.

"2. For the purposes of this action, the Court adopts as the ordinary and accepted meaning of the words 'garbage' and 'rubbish' the definitions contained in 'The Rules and Regulations Governing the Storage, Collection, Transportation and Disposal of Refuse in Robeson County, North Carolina' adopted by the Robeson County Board of Health on January 28, 1971, as follows:

'B. The word "garbage" means all putrescible solid wastes, including vegetable matter, animal offal, and carcasses of small animals (100 pounds or less), but excluding human body wastes, animal manure, and recognizable industrial by-products. Used milk cartons, or other discarded food containers that are not dry and clean shall be included in this definition.

'C. The word "rubbish" means non-putrescible solid wastes.'

"3. That the industrial solid wastes shown to have been removed and disposed of by plaintiff from the B. F. Goodrich Company and from TexFi Industries, do not constitute 'garbage,' with the exception of discarded food scraps, used milk cartons and other discarded food containers which are not dry and clean, but such industrial wastes

constitute 'rubbish' as above defined, and the Court finds the word 'trash' as used in the Resolutions, Ordinance and 'Exclusive Franchises and Agreements' is synonymous with 'rubbish.'

"4. That as against the plaintiff the purported grant of an Exclusive Right or Franchise to pick up, collect, transport and dispose of trash or 'rubbish' within a specified area is ultra vires and void.

"5. That as against the plaintiff the grant of an exclusive right to pick up, collect, transport and dispose of 'garbage' within the respective areas described in the Resolution and the 'Exclusive Franchises and Agreements' is a valid exercise of authority pursuant to G.S. 153-272.

"6. That Robeson County may not withhold the granting of a license to plaintiff to collect, pick up, or dispose of industrial solid wastes which do not contain 'garbage' by reason of the existence of the 'Exclusive Franchises and Agreements' entered into with defendants, Sanitation Service, Inc., and James Porter, and the resolutions of December 6, 1971, and May 27, 1972.

"7. That Robeson County may not withhold the granting of an 'approval letter' to plaintiff as may be required by the Rules and Regulations of the State Board of Health for Solid Waste Disposal Facilities by reason of the existence of those 'Exclusive Franchises and Agreements.' "

Upon these findings and conclusions the Superior Court enjoined the county and its Board of Commissioners from withholding, by reason of the existence of the franchises granted to Porter and to Sanitation Service, Inc., a license to the plaintiff to collect, pick up or dispose of solid wastes which do not contain "garbage" and from withholding, by reason of such franchise agreements, the granting of an approval letter required by the rules and regulations of the State Board of Health.

The franchises granted to Sanitation Service, Inc., and to Porter expressly provide that nothing therein shall prevent any person, firm or corporation, from personally disposing of his or its own trash or garbage in a lawful manner, and further provide that any landfill operated by Sanitation Service, Inc., shall be open to the public upon the payment of a reasonable fee for its use.

The Court of Appeals affirmed the judgment of the Superior Court, Vaughn, J., dissenting.

*Musselwhite & Musselwhite by Fred L. Musselwhite and Charlie S. McIntyre, Jr., for Lafayette Transportation Service, Inc.*

*Ellis E. Page for County of Robeson.*

*Earl Britt for James Porter.*

*Boyce, Mitchell, Burns & Smith by Eugene Boyce for Sanitation Service, Inc.*

LAKE, Justice.

The plaintiff did not appeal. The appellants take no exception to the conclusion of the Superior Court that, as against the plaintiff, the grants to Sanitation Service, Inc., and to Porter of exclusive franchises to pick up, collect, transport and dispose of "garbage," as defined in the judgment of the Superior Court, are valid. Thus, the correctness of that conclusion is not before us on this appeal.

The sole question before us on this appeal is the correctness of the conclusions of the Superior Court that the county is not authorized by G.S. 153-272 to grant an exclusive franchise to pick up, collect, transport and dispose of "trash" or "rubbish" and that the county may not, because of its issuance of the franchises to Sanitation Service, Inc., and to Porter, deny the plaintiff a license to pick up, collect, transport and dispose of industrial solid wastes which do not contain "garbage," or withhold from the plaintiff the approval letter required by the regulations of the State Board of Health as a prerequisite to an inspection of the plaintiff's solid waste disposal facility.

[1, 2]  A county has no inherent power to adopt ordinances relating to the collection and disposal of garbage and other waste material, having only those legislative powers which the General Assembly has seen fit to confer upon it. *Harris v. Board of Commissioners*, 274 N.C. 343, 163 S.E. 2d 387; *Surplus Co. v. Pleasants, Sheriff*, 264 N.C. 650, 142 S.E. 2d 697; *Ramsey v. Commissioners of Cleveland*, 246 N.C. 647, 100 S.E. 2d 55. In the construction of a statute conferring such powers upon the county, as in other cases of statutory construction, the function of the court is to discover the intent of the Legislature and to give

to the: words of the statute the meaning which the Legislature had in mind. *Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 2d 1; *Telephone Co. v. Clayton, Commissioner of Revenue,* 266 N.C. 687, 147 S.E. 2d 195. Unless the contrary appears, it is presumed that the Legislature intended the words of the statute to be given the meaning which they had in ordinary speech at the time the statute was enacted. *Supply Co. v. Motor Lodge,* 277 N.C. 312, 117 S.E. 2d 392; *Telephone Co. v. Clayton, supra; Seminary, Inc. v. Wake County,* 251 N.C. 775, 112 S.E. 2d 528; *Greensboro v. Smith,* 241 N.C. 363, 85 S.E. 2d 292. However, the context of the statute must also be considered. *Greensboro v. Smith, supra;* Strong, N. C. Index 2d, Statutes, § 5. In the absence of contrary indication, it is presumed that no word of any statute is a mere redundant expression. Each word is to be construed upon the supposition that the Legislature intended thereby to add something to the meaning of the statute. *In re Watson,* 273 N.C. 629, 161 S.E. 2d 1; *Jones v. Board of Education,* 185 N.C. 303, 117 S.E. 37.

G.S. 153-272, upon which the defendants rely as the source of their asserted authority to deny to the plaintiff a license to continue to carry on its established business, provides:

> *"Control of private collectors.*—The board of county commissioners of any county is hereby empowered to regulate the collection and disposal of *garbage* by private persons, firms or corporations outside of the incorporated cities and towns of the county for the purpose of encouraging and attempting to insure an adequate and continuing service of *garbage* collection and disposal where the board deems it to be desirable. In the exercise of such power, the board may issue a license to any private person, firm, or corporation to collect and/or dispose of *garbage;* may prohibit the collection and/or disposal of *garbage* by unlicensed persons, firms, or corporations; *may grant to licensed persons, firms, or corporations the exclusive right to collect and/or dispose of garbage for compensation within a specified area* and prohibit unauthorized persons, firms, or corporations from collecting and/or disposing of *garbage* within said area; and may regulate the fees charged by licensed persons, firms, and corporations for the collection and/or disposal of *garbage* to the end that reasonable compensation may be provided for such services. * * * "
> (Emphasis added.)

This statute was enacted in 1961. G.S. 153-275, which was part of the same Act (Chapter 514 of the Session Laws of 1961) provides:

> "*Powers granted herein supplementary.*—The powers granted to counties by this article shall be deemed supplementary to any powers *heretofore or hereafter* granted by any other law, either general, special, or local, for the same or similar purpose, and in any case where the provisions of this article conflict with or are different from the provisions of such other law, the board of county commissioners may in its discretion proceed in accordance with the provisions of such other law, or, as an alternative method, in accordance with the provisions of this article." (Emphasis added.)

Thus, the Legislature clearly intended that the authority conferred upon counties by G.S. 153-272 to grant an exclusive franchise to collect and dispose of "garbage" be construed in conjunction with other statutes granting authority to boards of county commissioners to deal with the matter of garbage collection and similar matters, including those subsequently enacted.

[3] In 1955 (Chapter 1050 of the Session Laws of 1955) the General Assembly enacted G.S. 153-10.1. The caption of this section, as printed in the current compilation of the General Statutes, reads, "*Local: Removal and disposal of trash, garbage, etc.*" When originally enacted, G.S. 153-10.1 was made applicable to certain named counties only. By numerous amendments in subsequent years, other counties were added. Robeson County was not included in the list of counties to which the statute originally applied or to which it was extended by these amendments. However, in 1969 (Chapter 1003 of the Session Laws of 1969) the paragraph limiting the application of this statute to certain named counties was repealed, thereby giving G.S. 153-10.1 statewide application. Thus, the word "local," still appearing in the caption of this section, is misleading and no longer applicable. G.S. 153-10.1, in effect as a statewide law at the time of the action of the Board of Commissioners here in question, is a grant of powers to the Board, which, by virtue of G.S. 153-275, is supplementary to the grant made by G.S.

153-272 and the two statutes must be construed together. G.S. 153-10.1 provides:

> "*Local: Removal and disposal of trash, garbage, etc.*— The board of county commissioners is hereby authorized and empowered, in its discretion, to issue, pass and promulgate ordinances, rules and regulations governing the removal, method or manner of disposal, depositing or dumping of any *trash, debris, garbage, litter, discarded cans or receptacles or any waste matter whatsoever* within the rural areas of the county and outside and beyond the corporate limits of any municipality of said county. * * *" (Emphasis added.)

Obviously, the word "garbage," as used in G.S. 153-10.1, has a meaning different from the meaning of "trash," "debris," "litter" and "waste matter," as used in that statute. Otherwise, the latter terms are meaningless redundancies, which cannot be presumed to have been the legislative intent.

Since the one statute is expressly declared by the Legislature to be supplementary to the other, the word "garbage" must be given the same meaning in both. While the word "garbage," standing alone, is loosely used in common speech to include a wide variety of waste, especially household waste, including, for example, waste papers and containers, this would seem to be the result of the common practice of householders to dispose of all types of kitchen and household wastes by putting them together in the same container for ultimate removal from the premises. Where there is a substantial, physical commingling of materials of different kinds, so that it is not thereafter practicable to separate them, the commingled mass tends to take on the character of the lowest grade of material.

Webster's New International Dictionary, 2d Ed., unabridged, defines garbage as "Offal, as the entrails of an animal or fish; refuse animal or vegetable matter from a kitchen, market, or store; often, loosely, offal mixed with other refuse, as ashes, paper, tin cans, etc.; hence, anything worthless or filthy; refuse." To the same effect, see: 38 C.J.S., Garbage, p. 189; McQuillin, The Law of Municipal Corporations, 3rd Ed., § 24.247.

The 1969 Legislature, which converted G.S. 153-10.1 into a statewide law, also enacted Article 13B of Chapter 130 of the General Statutes, authorizing the State Board of Health to

establish a statewide "Solid Waste Disposal Program." This Act, in G.S. 130-166.16, contains the following definitions:

"(1) 'Garbage'—All putrescible wastes, including animal and vegetable matter, animal offal and carcasses, and recognizable industrial by-products, but excluding sewage and human waste.

"(2) 'Refuse'—All nonputrescible wastes.

"(3) 'Solid waste'—Garbage, refuse, rubbish, trash and other discarded solid materials * * * "

While these definitions, as such, apply only to the defined terms as used in the Act of which they are a part, this statute is also part of the context in which G.S. 153-272 appears. It clearly shows the Legislature distinguished "garbage" from "trash" and "rubbish."

Again, in a much older statute, G.S. 160-233, adopted in 1917 and superseded in 1971 by G.S. 160A-192, the Legislature authorized municipal corporations to provide by ordinances for the removal of "garbage, slops, and trash." This statute, enacted long before G.S. 153-272, is also part of its context. It is another indication that, in the contemplation of the Legislature, "garbage" and "trash" have never been synonymous.

[4] Since the Legislature has used the words "trash," "debris," "litter" and "waste matter" to bring within the scope of G.S. 153-10.1, the companion, supplementary statute to G.S. 153-272, materials distinguishable, in its contemplation, from "garbage," and, in other related statutes, has also indicated its use of "garbage," "trash" and "solid waste" as distinguishable materials, we conclude that the word "garbage," standing alone in G.S. 153-272, must be given a restricted meaning such as that suggested in the above quoted dictionary definition.

We, therefore, find no error in the limitation by the Superior Court of the word "garbage," as used in G.S. 153-272, to the definition of that term stated in its Conclusion No. 2. Since, by the express terms of G.S. 153-272, the authority thereby conferred by the Board of County Commissioners to grant an exclusive franchise extends only to the collection and disposal of "garbage," it follows that there was no error in the conclusion of the Superior Court that the defendants do not have authority to grant an exclusive franchise "to pick up, collect, transport

and dispose of" wastes not falling within such definition of "garbage."

Consequently, there was no error in the conclusions of the Superior Court to which the defendants have excepted or in its judgment entered thereon.

Affirmed.