LENNIE AND BONNIE HAMBY v. PROFILE PRODUCTS, L.L.C., TERRA-MULCH PRODUCTS, L.L.C., ROY D. HOFFMAN, AND ELECTRIC SERVICE GROUP, INC.

No. 507A06

(Filed 9 November 2007)

**Appeal and Error; Workers' Compensation— appealability—partial summary judgment denied—third-party ordinary negligence claim and worker's compensation—possible inconsistent verdicts—summary judgment to be granted**

The trial court's interlocutory order denying summary judgment for a limited liability company (Profile) was reviewable on appeal where Profile was managing its subsidiary LLC (Terra-Mulch) when a Terra-Mulch employee was injured. Although plaintiffs argued that there were separate claims against the two companies with Profile being subject to ordinary negligence as a

third-party, Profile was conducting Terra-Mulch's business within the meaning of the Worker's Compensation Act and is thus entitled to the exclusivity provided by statute. Denying summary judgment for Profile while granting summary judgment for Terra-Mulch created a risk of inconsistent verdicts on the same facts and issues. The Court of Appeals' dismissal of Profile's appeal was reversed, and the matter remanded for entry of summary judgment for Profile.

Judge TIMMONS-GOODSON dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 179 N.C. App. 151, 632 S.E.2d 804 (2006), dismissing as interlocutory an appeal from an order entered on 23 June 2005 by Judge Nathaniel J. Poovey in Superior Court, Caldwell County. On 16 November 2006, the Supreme Court allowed defendant's petition for discretionary review as to additional issues. Heard in the Supreme Court 10 April 2007.

*Jones Martin Parris & Tessener Law Offices, P.L.L.C., by John Alan Jones and G. Christopher Olson; and Carter G. Bishop for plaintiff-appellees.*

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr. and Sarah L. Buthe; and Joseph W. Moss for defendant-appellant Profile Products, L.L.C.*

*Shumaker, Loop & Kendrick, LLP, by William H. Sturges; Kennedy, Covington, Lobdell & Hickman, LLP, by William G. Scoggin; and Alston & Bird, LLP, by H. Bryan Ives, III, for North Carolina Citizens for Business and Industry and North Carolina Associated Industries, amici curiae.*

NEWBY, Justice.

This case presents the issue of whether the exclusivity provision of the Workers' Compensation Act protects the member-manager of a limited liability company ("LLC") with respect to an employee's injuries arising out of employment with the LLC. We hold that the exclusivity provision applies when a member-manager is conducting the business of an employer LLC. Accordingly, we reverse the Court of Appeals.

HAMBY v. PROFILE PRODS., L.L.C.

[361 N.C. 630 (2007)]

## I. BACKGROUND

This action arises from injuries sustained by plaintiff Lennie Hamby ("Hamby") while working for defendant Terra-Mulch Products, L.L.C. ("Terra-Mulch"). Hamby was hurt when he fell into an auger pit while processing wood chips at Terra-Mulch's plant in Conover, North Carolina. Hamby and his wife ("plaintiffs") sued Terra-Mulch, Profile Products, L.L.C. ("Profile"), Roy D. Hoffman ("Hoffman"), and Electric Service Group, Inc. ("ESG").

Plaintiffs allege ESG was negligent in its performance of contracted electrical work, rendering certain safety equipment inoperable. Profile, Terra-Mulch, and Hoffman filed cross-claims against ESG alleging breach of contract and breach of warranty and seeking contribution in the event plaintiffs recovered damages.

Plaintiffs allege Hoffman, a plant manager and Hamby's co-employee, "breached his duty of care" by "engag[ing] in misconduct which was willful and wanton" and "demonstrat[ing] a manifest indifference to and·reckless disregard for the rights and safety" of the plant workers, directly and proximately causing Hamby's injury.

In their complaint, plaintiffs describe Terra-Mulch as "a wholly-owned subsidiary of Profile Products" and assert that "Profile Products controls and directs Terra-Mulch with respect to operation of the business" and "dominates and controls Defendant Terra-Mulch and is the alter ego of Defendant Terra-Mulch." Plaintiffs allege that Profile and Terra-Mulch collectively failed to provide a safe work site for the inherently dangerous work performed by Hamby and that they thus "engaged in misconduct which was grossly negligent, willful and wanton, and substantially certain to lead to death or serious injury with respect to operation of the plant."

Pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, ESG moved for summary judgment on all claims and cross-claims. Profile, Terra-Mulch, and Hoffman also moved for summary judgment on all claims asserted against them on grounds that plaintiffs' exclusive remedy is for workers' compensation benefits under Chapter 97 of the North Carolina General Statutes and thus the North Carolina Industrial Commission has exclusive jurisdiction over the claims at issue. In support of their motion, these defendants submitted, *inter alia*, the affidavit of Stephen Ade, Vice President and Chief Financial Officer for Profile, in which he stated: "Terra-Mulch Products, L.L.C. has at all relevant times been a limited liability com-

pany the sole member and manager of which has been Profile Products, L.L.C." The "Single Member Operating Agreement of Terra-Mulch Products, LLC," dated 24 August 1999 and adopted by Profile, designates Profile as the "sole member" of Terra-Mulch and further states, under the paragraph labeled "Management": "All decisions relating to the management, conduct and control of the business of the Company shall be made by the Member."

On 6 June 2005, the trial court heard arguments on all defendants' summary judgment motions. By orders filed on 23 June 2005, the trial court granted summary judgment for Terra-Mulch and Hoffman, but denied summary judgment for Profile and ESG. Profile appealed to the Court of Appeals, which, in a divided opinion, dismissed Profile's appeal as interlocutory because Profile "failed to show a substantial interest which would be lost if this appeal is dismissed." *Hamby v. Profile Prods., L.L.C.*, 179 N.C. App. 151, 158, 632 S.E.2d 804, 809 (2006). Specifically, the majority found that plaintiffs were actually alleging a gross negligence claim based on *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991) against employer Terra-Mulch; a willful, wanton, and reckless negligence claim based on *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985) against co-employee Hoffman; and an ordinary negligence claim against "third party" Profile. *Hamby*, 179 N.C. App. at 157, 632 S.E.2d at 808. Because the claims were different as to each defendant, the majority concluded that there was no risk of inconsistent verdicts. *Id.* The dissent contended that "[a]s the sole member-manager of Terra-Mulch, Profile could only be found liable to plaintiffs in the superior court under a *Woodson* claim, which plaintiffs acknowledged does not exist" and thus the exclusivity provision of the Workers' Compensation Act protected Profile. *Id.* at 165, 632 S.E.2d at 813 (Tyson, J., dissenting). As such, the dissent would have allowed the interlocutory appeal and reversed the trial court's denial of Profile's motion for summary judgment. *Id.* at 165-66, 632 S.E.2d at 813.

## II. ANALYSIS

Profile's appeal from the trial court's denial of its motion for summary judgment is interlocutory because the trial court's order "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). An interlocutory order is immediately appealable if the trial court certifies that: (1) the order represents a final judgment as to one or more claims in a multiple claim lawsuit or one or more parties in a multi-

party lawsuit, and (2) there is no just reason to delay the appeal. N.C.G.S. § 1A-1, Rule 54(b) (2005). Here, the trial court did not certify this appeal for review. Absent a Rule 54(b) certification, an interlocutory order may be reviewed if it will injuriously affect a substantial right unless corrected before entry of a final judgment. *Harris v. Matthews*, 361 N.C. 265, 269, 643 S.E.2d 566, 569 (2007) (citing *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990)).

This Court has recognized that a substantial right is affected if the trial court's order granting summary judgment to some, but not all, defendants creates the possibility of separate trials involving the same issues which could lead to inconsistent verdicts. *See Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982). Profile argues that if the case continues without its appeal being heard, plaintiffs' claims against Terra-Mulch will proceed before the Industrial Commission while plaintiffs' claims against Profile will proceed in civil court, even though the facts and issues before each tribunal would be the same. Specifically, Profile argues that its liability is inseparable from that of Terra-Mulch because Profile was conducting Terra-Mulch's business. Plaintiffs assert, and the Court of Appeals agreed, that the issues in each proceeding would be different because plaintiffs alleged different claims against Terra-Mulch and Profile: gross negligence as to the former and ordinary negligence as to the latter.

Preliminarily, we note that plaintiffs did not cross-assign error to the trial court's grant of summary judgment for Terra-Mulch on grounds that the exclusive remedy plaintiffs have against Terra-Mulch is under the Workers' Compensation Act. Plaintiffs' complaint, amended three times, asserts all claims against Terra-Mulch and Profile jointly, and none of these claims allege ordinary negligence as to those defendants. Before the trial court, the Court of Appeals, and this Court, plaintiffs have argued that Profile's liability is based on ordinary negligence, not gross negligence. The pivotal question presented by this case is whether, as a matter of law, plaintiffs are able to assert an ordinary negligence claim in civil court against Profile, the member-manager of the employer Terra-Mulch. To answer that question and, in so doing, determine whether the trial court's order creates the risk of inconsistent verdicts, we must decide whether Profile, like Terra-Mulch, is entitled to the protection of the exclusivity provision of Chapter 97.

The concept of exclusivity is found in two sections of the Workers' Compensation Act. N.C.G.S. § 97-9 requires employers to secure payment of compensation to their employees in accordance with the Act and states: "[W]hile such security remains in force, [the employer] or those conducting his business shall only be liable to any employee for personal injury or death by accident to the extent and in the manner herein specified." N.C.G.S. § 97-9 (2005). A subsequent section of Chapter 97 specifically excludes other rights and remedies against the employer:

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.

*Id.* § 97-10.1 (2005). In discussing the exclusivity provision of Chapter 97, this Court has explained:

> [T]he North Carolina Workers' Compensation Act was created to ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence. *See, e.g., Pleasant v. Johnson,* 312 N.C. 710, 712, 325 S.E.2d 244, 246-47 (1985). In exchange for these "limited but assured benefits," the employee is generally barred from suing the employer for potentially larger damages in civil negligence actions and is instead limited exclusively to those remedies set forth in the Act. *Id.; Woodson,* 329 N.C. at 338, 407 S.E.2d at 227.

*Whitaker v. Town of Scotland Neck,* 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003).

By its plain language, N.C.G.S. § 97-9 extends exclusivity protection beyond the employer to "those conducting [the employer's] business." N.C.G.S. § 97-9. We have noted that this phrase should be liberally construed and that "[o]ne must be deemed to be conducting his employer's business, within the meaning of this statute, whenever he, himself, is acting within the course of his employment, as that term is used in the Workmen's Compensation Act." *Altman v. Sanders,* 267 N.C. 158, 161, 148 S.E.2d 21, 24 (1966) (citing *Essick v. City of*

*Lexington*, 232 N.C. 200, 60 S.E.2d 106 (1950)). Previously, this Court has found certain individuals and entities, though distinct from the employer, still within the scope of the Act's exclusivity provision. *See, e.g., Woodson*, 329 N.C. 330, 407 S.E.2d 222 (sole shareholder and chief executive officer of the corporate employer); *Abernathy v. Consol. Freightways Corp.*, 321 N.C. 236, 362 S.E.2d 559 (1987) (injured worker's co-employees); *Bryant v. Dougherty*, 267 N.C. 545, 148 S.E.2d 548 (1966) (employer's workers' compensation insurance carrier); *McNair v. Ward*, 240 N.C. 330, 82 S.E.2d 85 (1954) (employer's general manager); *Essick v. City of Lexington*, 232 N.C. 200, 60 S.E.2d 106 (1950) (treasurer and superintendent of the employer's plant).

The decisive question then, whether Profile was conducting the business of Terra-Mulch, requires us to consider the nature of a limited liability company ("LLC") as a business entity and the role of its member-manager. An LLC is a "statutory form of business organization . . . that combines characteristics of business corporations and partnerships." Russell M. Robinson, II, *Robinson on North Carolina Corporate Law* § 34.01, at 34-2 (rev. 7th ed. 2006) [hereinafter *Robinson*]. Similar to statutes enacted in other states, the North Carolina Limited Liability Company Act provides for the formation of a business entity combining the limited liability of a corporation and the more simplified taxation model of a partnership. *Id.* § 34.01, at 34-2 to -3. These state laws provide default rules, most of which can be varied by the parties forming an LLC. *Id.* As such, the "LLC is primarily a creature of contract," allowing for great flexibility in its organization. *Id.* § 34.01, at 34-3. However, as its name implies, limited liability of the entity's owners, often referred to as "members," is a crucial characteristic of the LLC form, giving members the same limited liability as corporate shareholders. *Id.* § 34.03[3], at 34-15. Furthermore, LLC member-managers have authority comparable to corporate directors and officers combined. *Id.* § 34.04, at 34-18. As a corporation acts through its officers and directors, so an LLC acts through its member-managers, which can be natural persons or business entities. *See* Del. Code Ann. tit. 6, §§ 18-101(10), (11), (12), 18-402 (2005); N.C.G.S. §§ 57C-1-03(13), (14), (17), 57C-3-20 (2005).

Both Profile and Terra-Mulch are LLCs formed under Delaware law. The North Carolina LLC Act states that the liability of a foreign LLC's managers and members is governed by the laws of the state under which the LLC was formed. N.C.G.S. § 57C-7-01 (2005). Under Terra-Mulch's operating agreement, Profile is its sole member and is

exclusively charged with management of Terra-Mulch's business. As such, the liability of Profile in its role as Terra-Mulch's member-manager is governed by Delaware law.

The Delaware Limited Liability Company Act is similar to North Carolina's LLC statute. It vests management of an LLC in its managers. Del. Code Ann. tit. 6, § 18-402; *accord* N.C.G.S. § 57C-3-20(b). In turn, "each member and manager has the authority to bind the [LLC]." Del. Code Ann. tit. 6, § 18-402; *accord* N.C.G.S. § 57C-3-23 (2005) ("[T]he act of every manager . . . for apparently carrying on in the usual way the business of the limited liability company of which he is a manager[] binds the [LLC]. . . ."). Under Delaware law, the third-party liability of LLC member-managers is as follows:

> (a) Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability .company solely by reason of being a member or acting as a manager of the limited liability company.

> (b) Notwithstanding the provisions of subsection (a) of this section, under a limited liability company agreement or under another agreement, a member or manager may agree to be obligated personally for any or all of the debts, obligations and liabilities of the limited liability company.

Del. Code Ann. tit. 6, § 18-303 (2005); *accord* N.C.G.S. § 57C-3-30(a) (2005).[1]

---

1. North Carolina's third-party liability statute, N.C.G.S. § 57C-3-30(a), is substantially similar to that of Delaware, Del. Code Ann. tit. 6, § 18-303(a). Both statutes state that members or managers cannot be held liable for the obligations of an LLC "solely by reason of" being members or managers or participating in management of an LLC. Del. Code Ann. tit. 6, § 18-303(a); N.C.G.S. § 57C-3-30(a). The North Carolina statute also states that members.or managers may be held personally liable for their "own acts or conduct." *See* N.C.G.S. § 57C-3-30(a). However, this language appears to simply clarify the earlier principle: the liability of members or managers is not limited when they act outside the scope of managing the LLC. For example,

> personal guaranties executed by LLC members or managers are binding[,] . . . a member or manager can be a co-maker of an LLC obligation[,] . . . [and] a member or manager charged with collecting and paying over income tax withholding and other so-called "trust fund taxes" may be held liable for the failure to do so.

H. Bryan Ives, III, *North Carolina Limited Liability Companies* 93 (1994).

Under these statutes, absent an agreement to the contrary, member-managers are specifically shielded from liability when acting as LLC managers. Thus, when a member-manager acts in its managerial capacity, it acts *for* the LLC, and obligations incurred while acting in that capacity are those *of* the LLC. Accordingly, when a member-manager is managing the LLC's business, its liability is inseparable from that of the LLC.

In the instant case, Terra-Mulch's operating agreement vests full managerial powers in its member-manager Profile and does not alter Profile's limited liability. Thus, under the applicable law and agreement, Profile manages Terra-Mulch's business with limited liability for actions it takes as manager. Plaintiffs do not appear to aver anything other than that Profile managed Terra-Mulch. In their complaint, plaintiffs allege that Profile "control[led] and direct[ed]" the business affairs of Terra-Mulch and do not distinguish their allegations against, nor the actions of, Terra-Mulch and Profile, claiming both were grossly negligent and caused Hamby's workplace injury. Plaintiffs now argue that Profile should be treated as a third party, liable for its ordinary negligence in managing Terra-Mulch's safety program. However, Profile's management of this part of Terra-Mulch's business is no different from its handling of other aspects of Terra-Mulch's business. Indeed, maintenance of a safe workplace is a duty of every employer, *see, e.g.,* N.C.G.S. § 95-129(1)-(2) (2005). Finally, while plaintiffs assert that Terra-Mulch is a wholly-owned subsidiary of Profile, this matter does not affect our analysis. By their nature, members of an LLC *own* the LLC. *See, e.g., Robinson* § 34.03[1], at 34-10. Profile's status as owner of Terra-Mulch does not change the fact that it manages Terra-Mulch, and is thereby conducting Terra-Mulch's business. In summary, plaintiffs' forecast of evidence shows that Profile did nothing other than conduct Terra-Mulch's business within the meaning of the pertinent statutes.

In addition to our statutory analysis, we find support in our case law for the conclusion that Profile was conducting Terra-Mulch's business. As noted, we have recognized that the exclusivity protection under Chapter 97 extends to entities other than the employer. Specifically, we have found that exclusivity applies to officers of a corporation. *See Woodson,* 329 N.C. at 347-48, 407 S.E.2d at 232-33. In *Woodson,* the plaintiff sought to recover from the president and sole shareholder of her corporate employer in his individual capacity. *Id.* at 347, 407 S.E.2d at 232. We concluded that since the president and sole shareholder "was acting in furtherance of corpo-

rate business, . . . any individual liability on his part must be based on the same standard as that applied to the corporation." *Id.*

We find the analysis of *Woodson* equally applicable to a member-manager of an LLC in this context. As one conducting the employer's business and able to bind the employer, the liability of a member-manager is the same as that of the LLC employer it manages. As a final observation, we note that the trial court granted summary judgment in favor of Terra-Mulch employee Hoffman as to plaintiffs' *Pleasant* claim against him. Just as Hoffman as an individual was conducting his employer's business, Profile as a business entity was doing the same and is entitled to the protection of the Workers' Compensation Act's exclusivity provision.

## III.  DISPOSITION

For the reasons stated, we hold that, as the member-manager of Hamby's employer Terra-Mulch Products, L.L.C., Profile was "conducting [the employer's] business" within the meaning of the Workers' Compensation Act and is thus entitled to the exclusivity provided by statute. We find that the trial court's interlocutory order denying summary judgment for Profile is reviewable because Profile's liability for actions taken while managing Terra-Mulch is inseparable from the liability of Terra-Mulch, and thus the trial court's denial of summary judgment for Profile while granting summary judgment for Terra-Mulch creates a risk of inconsistent verdicts. Accordingly, we reverse the Court of Appeals' dismissal of Profile's appeal. We further conclude the trial court erred in denying Profile's motion for summary judgment because the denial was premised on plaintiffs' assertion of a third-party ordinary negligence claim against Profile, a claim that, as a matter of law, plaintiffs could not bring against Profile. Therefore, we remand this case to the Court of Appeals for further remand to the trial court for entry of summary judgment in favor of Profile.

REVERSED AND REMANDED.

Justice HUDSON did not participate in the consideration or decision of this case.

Justice TIMMONS-GOODSON dissenting.

Because I believe that Profile's appeal is interlocutory, premised on grounds not raised or ruled on in the trial court, and misinterprets

the LLC statute such that it is likely to have repercussions far beyond the realm of workers' compensation, I respectfully dissent.

## Interlocutory Nature

In the first instance, assuming *arguendo* that Profile is entitled to the immunity it seeks under either the Workers' Compensation or the Limited Liability Corporation (LLC) statutes, Profile's reasoning for why this appeal should go forward is unconvincing. It is uncontroverted that Profile's appeal from the trial court's denial of its motion for summary judgment is interlocutory. *See Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."(citation omitted)). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990).

There are sound reasons for this. We have previously held that "[t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Veazey*, 231 N.C. at 363, 57 S.E.2d at 382. However, interlocutory orders are immediately appealable if they: "(1) affect a substantial right and (2) [will] work injury if not corrected before final judgment." *Goldston*, 326 N.C. at 728, 392 S.E.2d at 737 (citing *Wachovia Realty Invs. v. Hous., Inc.*, 293 N.C. 93, 232 S.E.2d 667 (1977)). Therefore, the only way Profile can maintain this appeal is if it can show that it will lose a "substantial right" if the case proceeds any further at the trial level.

To that end, Profile argues that it has the substantial right not to be potentially subjected to two trials on the same issue, and therefore to be exposed to inconsistent verdicts. However, Profile's argument overlooks the key fact that *Terra-Mulch obtained summary judgment in its favor.* Therefore, the only potential trial that Profile could face would be as the sole defendant in a court proceeding designed to determine its own liability. With a single defendant and single set of facts, there is absolutely no possibility of inconsistent verdicts. As such, there is no substantial right implicated which would give rise to an immediate appeal.

The majority does not attempt to offer a reason as to why the Court of Appeals erred in finding that there was no substantial right

**HAMBY v. PROFILE PRODS., L.L.C.**

[361 N.C. 630 (2007)]

generating a right of immediate appeal, other than finding merit in appellant's claim that it is entitled to immunity under the LLC or workers' compensation statutes. The majority's approach to this case is backward. The analysis *starts* with evaluating the merits of Profile's claim. Having ruled in Profile's favor on the basis of hitherto unrecognized LLC immunity, only *then* does it somehow bootstrap that into a right of immediate appeal.

I note that both this Court and the Court of Appeals have uniformly rejected similar attempts by non-sovereign appellants claiming "immunity" in order to obtain immediate appellate review of an adverse ruling. We have specifically held that the right to avoid a trial in the wake of an unsuccessful motion for summary judgment is not a substantial right offering the route of immediate appeal. *See, e.g., Tridyn Indus., Inc. v. Am. Mut. Ins. Co.*, 296 N.C. 486, 491-92, 251 S.E.2d 443, 447-48 (1979). Furthermore, we have previously noted that "[p]ractically all courts which have considered the question, including our Court of Appeals, have held that the *denial* of a motion for summary judgment is not appealable." *Waters v. Qualified Pers., Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 344 (1978) (listing cases). *See also Robinson v. Gardner*, 167 N.C. App. 763, 769, 606 S.E.2d 449, 453 *disc. review denied*, 359 N.C. 322, 611 S.E.2d 417 (2005) ("Defendants do not seek to avoid inconsistent decisions; they seek to avoid any litigation at all.")

Since "[i]t is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal," *Johnson v. Lucas*, 168 N.C. App. 515, 518, 608 S.E.2d 336, 338 (quoting *Thompson v. Norfolk S. Ry.*, 140 N.C. App. 115, 121, 535 S.E.2d 397, 401 (2000) (citations and internal quotation marks omitted)), *aff'd per curiam*, 360 N.C. 53, 619 S.E.2d 502 (2005), I would affirm the determination of the Court of Appeals that this appeal is interlocutory.

### Procedural Posture

Procedurally, I believe that the issue of immunity premised on the LLC statute is not properly before us. The majority is correct in its assertion that Profile argued before the trial court that its conduct was immune as a member-manager, but it is important to understand that it sought this immunity under the Workers' Compensation Act *not* the LLC statute.

An examination of the pertinent portions of the transcript explains the thrust of Profile's argument:

[Defendant's attorney]: . . . . The cases, as I understand them . . . they hold that *in order to receive the exclusivity of the workers' comp statute,* 97-9, I believe it is, that you must control the business of the employer. . . . Profile Products operated all the business of Terra-Mulch except the plant itself.

It is significant that the rejoinder by plaintiff's attorney also focused on the exclusivity provisions of the Workers' Compensation Act.

Indeed, the first reference to LLC immunity apparently appears in the Court of Appeals dissent and its rejoinder from the majority. *Hamby v. Profile Prods., L.L.C.,* 179 N.C. App. 151, 163, 632 S.E.2d 804, 812 (2006) (Tyson, J., dissenting). It is revealing that a review of the Table of Authorities from defendant-appellant's briefs before the Court of Appeals reveals no citation to either North Carolina's or Delaware's statutory LLC immunity provisions (N.C.G.S. § 57C-3-30(a) or Del. Code Ann. tit. 6, § 18-303(a)), the very basis of this opinion. Granting immunity on a ground different from the one requested in the court below raises the specter of a *Viar* error. "It is not the role of the appellate courts, however, to create an appeal for an appellant." *Viar v. N.C. Dep't. of Transp.,* 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005).

Throughout the course of this litigation, Profile has attempted to gain immunity *under the Workers' Compensation Act.* The gist of Profile's argument was that their close nexus with Terra-Mulch entitled it to the same employer immunity enjoyed by the latter. This argument was considered by the Court of Appeals, evaluated in light of our jurisprudence, and soundly rejected. *Hamby,* 179 N.C. App. at 155, 632 S.E.2d at 807 (majority) ("Where a defendant is nothing 'more than a related, but separate entity' from the employer, the exclusivity provisions of the Workers' Compensation Act are not an absolute bar to recovery.") (citing *Cameron v. Merisel, Inc.,* 163 N.C. App. 224, 233, 593 S.E.2d 416, [423] (2004)).

Profile argued on the basis of workers' compensation exclusivity and lost. The majority now grants Profile immunity under the LLC statute, a different basis than the one it argued at the trial and intermediate appellate levels. Such a shift runs contrary to our long standing admonition that parties may not present, nor prevail upon, arguments in the appellate courts that were not argued in the trial court. *Weil v. Herring,* 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) (where theory argued on appeal was not raised before the trial court, "the law

does not permit parties to swap horses between courts in order to get a better mount" before an appellate court).

In this case, as reflected in defendant-appellant's Table of Authorities, LLC immunity was not argued before even the Court of Appeals, let alone the trial court. Therefore, I would hold that Profile may not raise it now.

## Substantive Concerns

Profile is chartered in Delaware, and therefore the outcome of the case hinges on the application of that state's law. The majority misinterprets the Delaware statute such that virtually any conduct by an LLC member is immunized. This radical expansion of the LLC immunity shield is, in my view, not mandated by the statute itself, and is contrary to our precedent. The Delaware statute states only that liability may not be predicated *solely* on membership in an LLC. *See* Del. Code Ann. tit. 6, § 18-303(a) (2005) ("Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company *solely* by reason of being a member or acting as a manager of the limited liability company.") (emphasis added). The majority's opinion appears to disregard the word "solely," which appears twice in the relevant statute. As we have held "[i]n the absence of contrary indication, it is presumed that no word of any statute is a mere redundant expression. Each word is to be construed upon the supposition that the Legislature intended thereby to add something to the meaning of the statute." *Lafayette Transp. Serv., Inc. v. Cty. of Robeson*, 283 N.C. 494, 500, 196 S.E.2d 770, 774 (1973) (citations omitted).

The Delaware Court of Chancery itself, when interpreting the same statute has not read it to confer the same sweeping immunity on member-managers as our *Hamby* opinion. The Delaware Court observed that "Section 18-303(a) protects members and managers of an LLC against liability for any obligations of the LLC solely by reason of being or acting as LLC members or managers. But, [the] phrase, 'solely by reason of being a member [] does imply that there are situations where LLC members and managers would not be shielded by this provision."). *Pepsi-Cola Bottling Co. of Salisbury,*

*Md. v. Handy,* No. 1973-S, 2000 WL 364199, at *3 (Del. Ch. Mar. 15, 2000) (No. 1973-S) (Mem.).

Other states, following Delaware's lead, have similarly interpreted the statute's plain meaning to shield LLC members from liability premised exclusively on their membership, but not from liability on the basis of their actions. *See e.g., Weber v. U.S. Sterling Sec., Inc.,* 282 Conn. 722, 732, 924 A.2d 816, 824 (2007). Federal courts have arrived at the same conclusion. *See e.g., Equipoise PM LLC v. Int'l Truck & Engine Corp.,* —— F.3d ——, 2006 WL 1594077, at *4 (N.D. Ill. June 5, 2006) (No. 05 C 6008).

Commentators have taken an identical view. *See* 2 R. Franklin Balotti, Jesse A. Finkelstein, Martin I. Lubaroff & Paul M. Altman, *Balotti and Finkelstein's Delaware Law of Corporations and Business Organizations* § 20.7 (2007); Practicing Law Inst, *Organization and Operation of the Limited Liability Company: Substantive Issues* 937 PLI/Corp. 149, 191 (1996).

It is noteworthy that in the only two prior cases interpreting the statute, North Carolina courts have demonstrated a grasp of the key distinction between imposing liability on the basis of a member-manager's actions versus mere membership. In *State ex rel. Cooper v. NCCS Loans, Inc.,* 174 N.C. App. 630, 624 S.E.2d 371 (2005), the Court of Appeals held that where an individual repeatedly set up business entities to evade state usury laws, the trial court was correct in looking beyond the corporate (LLC) form to the substance of the transactions in order to restrain the individuals behind conduct. The majority holding here as applied to *NCCS* would have effectively subordinated the state's usury laws to the corporate LLC form. In *Page v. Roscoe, LLC,* 128 N.C. App. 678, 686-87, 497 S.E.2d 422, 428 (1998), the only case other than *NCCS* construing the LLC immunity statute, our Court of Appeals upheld Rule 11 sanctions against an attorney whose pleadings against an LLC member were premised solely on the defendant's LLC membership, and not his actions.

It is precisely this pivotal membership-action distinction that the majority obfuscates. Here, plaintiff noted that pursuant to undisclosed agreements between Profile and employer Terra-Mulch, Profile had undertaken certain responsibilities regarding the employer's operations, including safety. Alleged negligence in performing those operations, and not Profile's mere status as an LLC member-manager, is the basis for plaintiff's current action. Under the status versus actions scheme of immunity outlined above there-

**HAMBY v. PROFILE PRODS., L.L.C.**

[361 N.C. 630 (2007)]

fore, Profile is not entitled to the blanket immunity the majority awards it.

The Court of Appeals, including the majority in this case, has recognized this distinction between status and actions, as have virtually all other jurisdictions. Strong public policy reasons favor that we follow their lead and not obliterate it. On substantive grounds therefore, I would uphold the Court of Appeals decision.

### Relationship Between Profile and Terra-Mulch

The record reveals that Terra-Mulch and Profile are two distinct entities, with different employees, tax identification numbers, assets, liabilities, product lines and businesses. Furthermore, the record contains evidence about Profile's role in managing the safety features of Terra-Mulch's Conover facility, and the deficiencies therein.

Stephen Ade, the Chief Financial Officer of Profile, testified that he coordinated safety activities for the plants. He admitted that the emergency stop button on the machine that maimed plaintiff had been disconnected, and though he blamed a third party vendor for the disconnection, he candidly conceded that the button had not been tested prior to the injury. Surely the failure of the safety program to test a critical emergency feature raises at least a triable issue of fact with respect to Profile's negligence in conducting the safety program.

Similarly, a February 25, 2002 letter on behalf of St. Paul Underwriting to Jim Cebulski, Vice President and Controller of Profile warns that despite "some concern" "there has [*sic*] been very few or no management systems developed or implemented to control employee or premise safety . . ." and that the emphasis remains "on improving productivity." The record also contains an e-mail, apparently from the same individual who wrote the above letter, advising his colleagues at the insurance company:

> Basically, the nine recommendations I submitted with My February Report have not been complied with . . . My viewpoint is that this location of Profile Products continues to be the worst workers comp risk I have seen in a long, long time. We should not insure this one!

It is worth noting that all the individuals and activities referenced above relate to Profile, LLC, not Terra-Mulch, the statutory employer. Given the issues raised with respect to *Profile's* own negligence, and

its undisputed status as a separate entity, I cannot agree with the majority's holding granting Profile immunity on the basis of its LLC status.

## Conclusion

Given the importance of the subject, I believe that in light of (i) this case's skimpy, almost skeletal, procedural and factual background, and (ii) its origin from the Court of Appeals in a dissent premised on an issue neither argued nor briefed before that Court, this case is an inappropriate vehicle to issue a ruling with such tremendous ramifications. Therefore, I respectfully dissent.