IN THE SUPREME COURT OF NORTH CAROLINA

No. 71PA24

Filed 17 October 2025

DORIS GRIFFIN LAND and ELLIOTT LAND

v.

KORI B. WHITLEY, M.D., PHYSICIANS EAST, P.A. d/b/a GREENVILLE OB/GYN, PITT COUNTY MEMORIAL HOSPITAL, INC. d/b/a VIDANT MEDICAL CENTER, and PITT COUNTY MEMORIAL HOSPITAL, INC. d/b/a VIDANT SURGICENTER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 292 N.C. App. 244 (2024), affirming an order entered on 27 October 2022 by Judge William R. Pittman in Superior Court, Pitt County. Heard in the Supreme Court on 23 October 2024.

*Miller Law Group, PLLC, by MaryAnne M. Hamilton and Bruce W. Berger, for plaintiff-appellees.*

*Robinson, Bradshaw & Hinson, P.A., by Matthew W. Sawchak, Erik R. Zimmerman, and Ethan R. White, for defendant-appellants; Hall Booth Smith, P.C., by Elizabeth P. McCullough and Kelsey Heino, for defendant-appellants Kori B. Whitley, M.D. and Physicians East, P.A. d/b/a Greenville OB/GYN; and Harris, Creech, Ward & Blackerby, P.A., by W. Gregory Merritt, for defendant-appellants Pitt County Memorial Hospital, Inc. d/b/a Vidant Medical Center and Pitt County Memorial Hospital, Inc. d/b/a Vidant SurgiCenter.*

*Todd Law Offices, PLLC, by Elizabeth C. Todd; and Brown Moore & Associates, PLLC, by Matthew C. Berthold and Jennifer L. Maynard, for North Carolina Advocates for Justice, amicus curiae.*

*Cranfill Sumner LLP, by Steven A. Bader and Kelley M. Petcavich, for North Carolina Association of Defense Attorneys, amicus curiae.*

*K&L Gates LLP, by Derek A. Sutton, Robert B. Womble, and Ashley Lee Hogewood III, for North Carolina Chamber Legal Institute, amicus curiae.*

*Young Moore and Henderson, P.A., by Christy C. Dunn and Angela Farag Craddock, for North Carolina Health Care Facilities Association, North Carolina Senior Living Association, and North Carolina Assisted Living Association, amici curiae.*

*Michael Best & Friedrich LLP, by Justin G. May and Michael G. Schietzelt, for North Carolina Medical Society and American Medical Association, amici curiae.*

RIGGS, Justice.

When a trial court makes a ruling on motions prior to the disposing of all claims, such as a ruling on a motion to dismiss, that ruling is an "interlocutory order." *See* N.C.G.S. § 1A-1, Rule 54(a) (2023). The general rule is that "there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725 (1990). The party wishing to appeal the interlocutory order must wait until there has been a final judgment in the case before the interlocutory order may be appealed. *Veazey v. City of Durham*, 231 N.C. 357, 362 (1950). The purpose for this rule is to "forestall the useless delay inseparable from unlimited fragmentary appeals, and to enable courts to perform their real function, i.e., to administer right and justice without sale, denial, or delay." *Id.* at 363–64 (cleaned up).

However, there are exceptions to the general rule where an interlocutory order is immediately appealable. *See* N.C.G.S. §§ 1-277, 7A-27(a)(3), (b)(3) (2023); N.C.G.S. § 1A-1, Rule 54(b) (2023). Defendants have raised two such exceptions that they

-2-

argue apply in their request for appellate review of the trial court's denial of their motions to dismiss: those established under N.C.G.S. § 1-277(a) and (b). First, under subsection 1-277(a), an interlocutory order is immediately appealable if it would impair a party's substantial right absent such review. Second, under subsection 1-277(b), an appellate court may review orders that rule adversely upon the court's jurisdiction over a party's person or property.

We conclude that defendants fail to satisfy either avenue for appellate review. Therefore, the trial court's interlocutory order was not immediately appealable and the Court of Appeals did not have jurisdiction to review the matter. We thus vacate the Court of Appeals' judgment and remand for further proceedings not inconsistent with this opinion.

## I. Factual & Procedural Background

The events at the center of this case occurred during the beginning of the COVID-19 pandemic, which soon triggered a state of emergency across the country, including in North Carolina. In response to the pressures on health care providers, the North Carolina General Assembly enacted the Emergency or Disaster Treatment Protection Act (the Emergency Act). N.C.G.S. §§ 90-21.130, -21.134 (2023). The Emergency Act granted immunity to health care providers acting in good faith during the pandemic from civil liability "for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services" where the arrangement or provision of healthcare is impacted,

directly or indirectly, by the health care provider's response or decisions in response to or as a result of the COVID-19 pandemic. N.C.G.S. § 90-21.133(a) (2023). This immunity did not apply if the harm or damages were caused by gross negligence. *Id.* § 90-21.133(b). The law applies to acts or omissions occurring during certain times after March 10, 2020.

Doris Land received medical care during the pandemic. At her routine physical on 11 March 2020, Ms. Land underwent a screening for cervical Papanicolaou smear (Pap smear). A sample of that Pap smear showed abnormal cells, so Ms. Land was referred to a specialist, Dr. Kori Whitley, for additional testing and treatment. Dr. Whitley performed additional tests on 22 April 2020 and discovered the presence of a lesion which could progress to cervical cancer. One month later, on 27 May 2020, Dr. Whitley performed a procedure to remove precancerous cells, but a later report showed that some cells remained. Dr. Whitley then recommended removing the remaining precancerous tissue through a vaginal hysterectomy.

Ms. Land's hysterectomy operation took place on 29 June 2020 at Vidant SurgiCenter. During the procedure, a long cervix and a uterine fibroid impeded visualization of the surgical field. Dr. Whitley continued the procedure rather than shifting to a more intrusive open hysterectomy that would have increased her visibility. Dr. Whitley completed the procedure, but Ms. Land experienced postoperative problems. At the two-week postoperative visit, Ms. Land notified Dr. Whitley of her abdominal pains and struggles with constipation. According to Ms.

Land's Complaint, Dr. Whitley did not examine her during the visit but instead renewed her prescription for oxycodone. After this visit, Ms. Land continued to have pain, weakness and loss of appetite.

On 25 July 2020, with continuing pain, Ms. Land visited Vidant Medical Center's emergency room, where she was diagnosed with sepsis, stage four kidney failure, and an infection in her abdomen. Dr. Kenneth McDonald, a surgeon, initiated emergency surgery, during which he discovered that Ms. Land's abdomen "was hindered by the presence of purulent material and a thick-walled abscess in her pelvic cavity." To explore Ms. Land's pelvic cavity, Dr. McDonald cut open Ms. Land's abdomen and "removed the purulent, infected tissue." He "discovered that Dr. Whitley . . . had left a[ ] remnant of uterus in [Ms. Land's] body during the [hysterectomy] procedure."

Dr. McDonald removed nearly twelve inches of Ms. Land's bowel due to the infection that had spread from the uterine remnant. In his postoperative report, Dr. McDonald noted that Ms. Land had diffuse peritonitis, a pelvic abscess, and an incomplete vaginal hysterectomy with uterine remnant. After the surgery, Ms. Land remained in critical condition, and Dr. McDonald transferred her to the ICU, where Ms. Land developed respiratory failure and remained intubated until 28 July 2020. She was discharged on 7 August 2020 but still had chest and pelvic drains for fluid and pus that accumulated from her infected wounds. She also had a large wound vacuum device attached to her abdominal wall.

On 17 August 2020, Dr. McDonald saw Ms. Land at his office and she still suffered from persistent weakness, lack of appetite, and shortness of breath, which continued over the next three weeks. On 25 August 2020, Ms. Land again visited Vidant Medical Center's emergency department complaining of breathing difficulties and was diagnosed with pulmonary emboli, a life-threatening condition resulting from her abdominal infection, in both lungs. After this visit, Ms. Land's breathing symptoms had improved and her abdominal wound was slowly healing. By 14 October 2020, Dr. McDonald reevaluated Ms. Land and her wound had almost healed, but Ms. Land could not walk without assistance or return to work. On 16 November 2020, at a reevaluation with Dr. McDonald, Ms. Land's wound had not completely healed and she complained of wound "pulling" and bleeding. On 18 November 2020, Ms. Land returned to work but could not lift anything remotely heavy, and she was unable to perform other duties at her place of employment.

On 16 February 2022, Ms. Land and her husband filed this action against Dr. Whitley, Physicians East, P.A. d/b/a Greenville OB/GYN, and Pitt County Memorial Hospital, Inc. d/b/a Vidant Medical Center and d/b/a Vidant SurgiCenter (collectively, defendants) for negligence and gross negligence. Relevant here, Ms. Land argues that Dr. Whitley's choice of a riskier surgical method, postoperative care, and response to signs of infection—violated the duty of care she owed to Ms. Land.

Defendants moved to dismiss Ms. Land's lawsuit on 2 May 2022 and 9 May 2022. On 24 and 25 October 2022, defendants amended their motions to dismiss on

the grounds that: (1) they are immune from suit under the Emergency Act, requiring dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure, lack of personal jurisdiction under Rule 12(b)(2), and failure to state a claim for relief under Rule 12(b)(6); and (2) the complaint was noncompliant with Rule 9(j) on its face.

Defendants argued that allowing the case to move forward would contravene the purpose of immunity outlined in the Emergency Act. Defendants contended that the immunity applied because (1) the health care services at issue were rendered during the pandemic, (2) the arrangement and provision of the health care services were impacted by the pandemic, and (3) Ms. Land did not allege that defendants acted in bad faith.

On 27 October 2022, the trial court denied defendants' motions, and defendants timely appealed to the Court of Appeals. On 21 April 2023, Ms. Land filed a motion to dismiss defendants' appeal on the grounds that the appeal is interlocutory and does not implicate a substantial right. The Court of Appeals ultimately affirmed the trial court's order denying defendants' motion to dismiss. *Land v. Whitley*, 292 N.C. App. 244, 246 (2024).

First, in addressing their appellate jurisdiction, the Court of Appeals explained that while "claims of immunity affect a substantial right, and therefore merit immediate appeal," "a party claiming the protection of statutory immunity must satisfy all of the requirements of the statute granting the claimed immunity in order

to establish a substantial right entitling [the party] to an immediate appeal." *Id.* at 250 (cleaned up) (quoting *Wallace v. Jarvis*, 119 N.C. App. 582, 585 (1995)); *see id.* (explaining that unlike the common-law theory of sovereign immunity available to the sovereign or the state, statutorily created immunity is available if the requirements of the relevant statute are satisfied). Additionally, while the Court of Appeals has recognized immunity as a defense that can be raised under 12(b)(1), (b)(2), and (b)(6) motions to dismiss,[1] the denial of a defendant's motion to dismiss under 12(b)(1) for a lack of subject matter jurisdiction is not immediately appealable. *Id.* As relevant here, the Court of Appeals concluded that defendants' appeal of the trial court's denial of the 12(b)(1) motion was not properly before the court. *Id.*

In analyzing the trial court's denial of defendants' 12(b)(2) and (b)(6) motions to dismiss, which were grounded on the claim of statutory immunity, the Court of Appeals inquired whether defendants satisfied the statutory requirements of the Emergency Act. *Id.* at 253. Defendants argued that the Emergency Act's three statutory requirements for immunity from civil liability existed on the face of plaintiffs' complaint, barring the suit based on the Emergency Act's immunity. *Id.* at 251. The Court of Appeals disagreed and explained that those seeking to use the affirmative defense of statutory immunity under the Emergency Act must establish that: "(1) the health care provider must be arranging for or providing health care

---

[1] Defendants can raise a Rule 12(b)(1) motion for lack of subject matter jurisdiction, a 12(b)(2) motion for lack of personal jurisdiction, and 12(b)(6) motion for failure to state a claim upon which relief can be granted. N.C.G.S. § 1A-1, Rule 12(b) (2023).

during the COVID-19 emergency; (2) the care provided must be affected, directly or indirectly, by the COVID-19 pandemic; and (3) the defendant must act in good faith." *Id.* at 251–53 (cleaned up); *see also* N.C.G.S. § 90-21.133(a).  After analyzing these factors and concluding that defendants did not satisfy two of the three statutory requirements, the Court of Appeals affirmed the trial court's denial of the motions to dismiss under 12(b)(2) lack of personal jurisdiction and 12(b)(6) for failure to state a claim.  *Land*, 292 N.C. App. at 256.

The Court of Appeals also explained it was evident that the Emergency Act was not intended to grant blanket immunity to health care providers from every claim of civil liability during the pandemic, but rather only to health care providers who show that he or she meets the statutory requirements and has not engaged in actions constituting gross negligence, reckless misconduct, or intentional infliction of harm in order to receive the immunity from any civil liability.  *Id.* at 253–54.  This, they concluded, was consistent with the general principle of statutory immunity, which is an affirmative defense available only if  a defendant "satisfies all of the requirements or elements defined in the relevant statutes."  *Id.* at 254 (cleaned up).

On 12 March 2024, defendants timely filed a petition for discretionary review of the Court of Appeals' decision, which we allowed, on the following three issues:

> 1. Does the Emergency or Disaster Treatment Protection Act require a causal link between Covid-19 and a defendant's alleged negligence?
>
> 2. To obtain a dismissal under the Emergency Act, must a defendant prove good faith, even when a complaint does

not allege bad faith?

3. Does a complaint's unsupported assertion of gross negligence bar dismissal under the Emergency Act?

We hold today that defendants did not have a right to immediate appellate review of the trial court's interlocutory order. We thus do not address these questions presented for our review, and instead we vacate the Court of Appeals' judgment and remand for further remand to the trial court for proceedings not inconsistent with this opinion.

## II.   Analysis

An interlocutory order is an order "made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey*, 231 N.C. at 362. Generally, interlocutory orders are not immediately appealable. *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558 (2009). This general rule governing appeals is designed "to prevent fragmentary and premature appeals that unnecessarily delay the administration of justice and to ensure that the trial divisions fully and finally dispose of the case before an appeal can be heard." *Sharpe v. Worland*, 351 N.C. 159, 161 (1999) (quoting *Bailey v. Gooding*, 301 N.C. 205, 209 (1980)).

However, the General Assembly has carved out two exceptions to this general rule. N.C.G.S. § 1-277 (2023). A party has an immediate right of appeal of an order that "affects a substantial right." *Id.* § 1-277(a). A party also has an "immediate

[right of] appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant." *Id.* § 1-277(b). Defendants argue that both avenues of appellate review are applicable here. We disagree.

## A. N.C.G.S. § 1-277(a)

Under subsection 1-277(a), the Court of Appeals may review the appeal of "every judicial order or determination of a judge of a superior or district court . . . that affects a substantial right claimed in any action or proceeding." N.C.G.S. § 1-277(a).[2] Our precedent defines a "substantial right" as one "materially affecting those interests which [a person] is entitled to have preserved and protected by law." *Fisher v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 369 N.C. 202, 207 (2016) (quoting *Gilbert v. N.C. State Bar*, 363 N.C. 70, 75 (2009)). This right must be one they "might lose if the order is not reviewed before final judgment." *Hanesbrands Inc. v. Fowler*, 369 N.C. 216, 218 (2016) (quoting *City of Raleigh v. Edwards*, 234 N.C. 528, 530 (1951)); *see also Sharpe*, 351 N.C. at 162 ("Essentially a two-part test has developed— the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment." (quoting *Goldston*, 326 N.C. at 726)). Because defining a substantial right is often easier than identifying one, "the particular facts of that case and the procedural

---

[2] Subsection 7A-27(b)(3) works in tandem by providing that there is an immediate appeal of right directly to the Court of Appeals from any interlocutory order or judgment of a superior court or district court in a civil action or proceeding that affects a substantial right. N.C.G.S. § 7A-27(b)(3) (2023).

context in which the order from which appeal is sought was entered" serve as helpful guidance. *Hanesbrands*, 369 N.C. at 219 (quoting *Waters v. Qualified Pers.*, 294 N.C. 200, 208 (1978)).

The threshold question that we must resolve here is whether the immunity at issue in this appeal is the kind that would constitute a substantial right subject to loss if not dealt with in an interlocutory appeal. Some immunities, such as sovereign and governmental immunities, have been recognized as creating a substantial right because those immunities are "*immunity from suit* rather than a mere defense to liability" that "shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337–38 (2009) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 525 (1985)). That immunity is effectively lost if a case is permitted to go to trial. *Corum v. Univ. of N.C.*, 330 N.C. 761, 773 (1992) (citing *Mitchell,* 472 U.S. at 526). We affirmed this principle in *State v. Kinston Charter Academy*, 379 N.C. 560 (2021). *See id.* at 571 ("The doctrine of governmental immunity, which resembles that of sovereign immunity, renders local governments such as counties and municipal corporations immune from suit for the negligence of their employees in the exercise of governmental functions absent waiver of immunity." (cleaned up)).

We have also recognized statutory immunity from suits. For example, North Carolina's Workers' Compensation Act has exclusivity provisions that expressly limit employers' liability for their employees' work-related injuries in exchange for the

benefits employees receive under the statute, including obtaining compensation for work-related injuries without having to prove negligence or defend against contributory negligence. *Hamby v. Profile Prods., L.L.C.*, 361 N.C. 630, 634–35 (2007) ("While such security remains in force, the employer or those conducting his business shall only be liable to any employee for personal injury or death by accident to the extent and in the manner herein specified." (cleaned up) (citing N.C.G.S. §§ 97-9, -10.1 (2005))). In exchange for workers' compensation benefits, employees are, as a matter of law, generally barred from even suing their employer, absent evidence of intentional misconduct, for recovery outside of the recovery and remedies available to them under the statute. *Id.* at 635.

Immunity under the Emergency Act, however, offers conditional statutory protection for defendants not from the burden of being dragged into court to defend themselves but "from any civil liability" for harm or damages contingent on specific pandemic-related circumstances. N.C.G.S. § 90-21.133(a) ("[A]ny health care facility, health care provider, or entity that has legal responsibility for the acts or omissions of a health care provider shall have immunity from any civil liability for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services . . . ."). Defendants ask us to interpret this statute as creating an immunity from suit akin to governmental or sovereign immunity, but the plain language of the statute precludes that interpretation. The word "immunity" in the statute is followed by "from any civil

liability." *Id.* The statute, then, expressly creates a defense to liability, not an immunity from suit. *Corum*, 330 N.C. at 773; *see id.* ("Qualified immunity, if available, provides 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" (emphasis omitted) (quoting *Mitchell*, 472 U.S. at 526)).

This interpretation is buttressed by the fact that the statute goes on to list the factual criteria that will determine whether a defendant enjoys that immunity from liability. N.C.G.S. § 90-21.133(a)(1)–(3). Given that the General Assembly predicated immunity from liability on fact-heavy determinations like whether the defendant acted in good faith or whether the services were impacted by the COVID-19 pandemic, it follows logically that the General Assembly did not intend to create an immunity from being brought into court entirely. While our analysis need not proceed beyond the plain language of the statute, we also note that defendants' reliance on our decision in *Burton v. Phoenix Fabricators & Erectors, Inc.*, 362 N.C. 352 (2008) (order), is misguided.

*Burton* involved a defendant's assertion of immunity from suit, not immunity from liability. There, we recognized that that a trial court's denial of the defendant's motion to dismiss based on statute-created immunity affected a substantial right. *Id.* at 352 (remanding the case to the Court of Appeals for consideration of the merits). The statute at issue in *Burton*, the Indiana Workers' Compensation Act, expressly barred tort actions, like the plaintiffs' wrongful death actions, against employers for

-14-

additional recovery by employees who accepted workers' compensation benefits. *Burton v. Phoenix Fabricators & Erectors, Inc.*, 194 N.C. App. 779, 782–83 (2009). Specifically, the statute had an exclusive remedy provision that precluded tort actions like plaintiffs' as part of the compromise that employees make when they accept benefits under the statute.[3]  *Id.* at 782.  The Court of Appeals explained that denying an employer the benefit of the exclusive remedy provision—the immunity—would frustrate the purpose of the statute.  *Id.* at 785–86 ("[T]o deny a person the immunity granted him by a workmen's compensation statute of a given state would frustrate the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what these costs will be." (cleaned up)).  In other words, the defendant in *Burton* had the right to avoid being dragged into court for workplace tort claims that were subject to the exclusive jurisdiction of Indiana's equivalent of the North Carolina Industrial Commission.  *Id.*

The Emergency Act is not like the workers' compensation statute in *Burton*, which expressly precluded the *Burton* plaintiffs' claims from being brought in court in the first place.  The denial of defendants' motions here does not foreclose their ability to raise their immunity defense at summary judgment, trial, or in a later appeal after a final judgment.  *See Wake Cnty. v. Hotels.com, L.P.*, 235 N.C. App. 633,

---

[3] The Indiana Workers' Compensation Act, the relevant statute in *Burton*, includes a provision for exclusive remedies that expressly excludes all other rights and remedies on account of accidental injury or death.  Ind. Code Ann. § 22-3-2-6 (West, Westlaw through 2025 First Reg. Sess.).

649 (2014) ("The denial of a motion to dismiss made under Rule 12(b)(6) does not prevent the court, whether in the person of the same or a different superior court judge, from thereafter allowing a subsequent motion for summary judgment made and supported as provided in Rule 56.")  Thus, any perceived injury from the denial of their motions could be remedied later in the trial proceeding or on appeal, precluding the need for interlocutory review.

**B.  N.C.G.S. § 1-277(b)**

Defendants reason that the Court of Appeals' review of their denied Rule 12(b)(2) motion to dismiss was proper under subsection 1-277(b) because "[i]mmunities are matters of personal jurisdiction" and the Emergency Act deprived the trial court of personal jurisdiction.  Defendants are incorrect in their arguments on this front.

Under N.C.G.S. § 1-277(b), a party has the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the party or their property. N.C.G.S. § 1-277(b).  Defendants rely on a trio of noncontrolling Court of Appeals cases to support their argument that immunities are matters of personal jurisdiction.[4]  Defendants, however, miss two cases in the jurisprudence of this Court

---

[4] Beyond the fact that these cases are not controlling on this Court, two of the cases relied upon are inapplicable.  Defendants cite *Can Am South, LLC v. State*, 234 N.C. App. 119, 123–24, (2014), which is not applicable in the instant case because *Can Am* involved an order denying a motion to dismiss on the basis of sovereign immunity, which provides immunity from suit, not liability.  Defendants also cite *Meherrin Indian Tribe v. Lewis*, 197 N.C. App. 380, 384 (2009), which also involved an appeal of a motion to dismiss based on sovereign immunity—again, an immunity from suit.

that resolve this dispute as to their claim. Historically, this Court has taken a narrow view of § 1-277(b)'s scope. *See Love v. Moore*, 305 N.C. 575, 581 (1982) (limiting the right of immediate appeal of an adverse ruling as jurisdiction over the person under N.C.G.S. 1-277(b) to rulings on "minimum contacts" questions); *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327–28 (1982) (declining to determine whether the doctrine of sovereign immunity is a matter of personal jurisdiction).

Additionally, we noted in *Love* that a motion under 12(b)(2) did "not put an end to the case and [was] unquestionably interlocutory." *Id.* at 579 (internal quotations omitted). Indeed, "defendant's objections to the court's jurisdiction have been preserved and can be fully reviewed on appeal from a final judgment"—meaning that a delay in resolving on appeal these rulings does not constitute an irreparable injury. *Id.*

Defendants here have not invoked any question about whether the depth of their contacts within the state is sufficient to justify the court's jurisdiction over their person and property. We decline to adopt the broader interpretation of N.C.G.S. 1-277(b) that defendants propose today as to their challenge to personal jurisdiction based on a statutory, not sovereign, immunity. We hold then that their appeal is not the kind of interlocutory appeal authorized under N.C.G.S. 1-277(b).

Again, should defendants be entitled to immunity from liability, they will have the opportunity to raise that defense in the litigation process and a reviewing court will have the benefit of a fully developed record. But the Emergency Act, which

provides qualifying parties with immunity from civil liability, does not provide immunity from suit. Thus, the Court of Appeals erred in exercising appellate review under section 1-277.

## III.    Conclusion

We hold that the Court of Appeals erred in exercising appellate jurisdiction over defendants' appeal. Appellate review of an interlocutory order is appropriate when that order affects a substantial right that may be lost if review is delayed until after a final judgment. *N.C. Nat'l Bank v. Va. Carolina Builders*, 307 N.C. 563, 566 (1983). The denial of a motion to dismiss on statutory immunity grounds can implicate such a substantial right, but only where the statute creates an immunity from suit, as opposed to immunity from liability. Appellate review of an interlocutory order is also appropriate under N.C.G.S. § 1-277(b) if a party intends to challenge an adverse trial court ruling concerning personal jurisdiction. As we established in *Love*, subsection 1-277(b) only applies to personal jurisdiction and we have construed exceptions to the rule limiting immediate appealability of interlocutory orders narrowly.

Neither of defendants' motions to dismiss under Rule 12(b)(2) or Rule 12(b)(6) are immediately appealable. Accordingly, we vacate the Court of Appeals' judgment and remand for further remand to the trial court for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.